## No. 8150.

### ORR & LINDSLEY vs. LISSO & SCHEEN.

Foreign creditors, having contracted with citizens of Louisiana whilst its Insolvency Laws were in force, cannot claim in the State Courts an exception from the operation of those laws; and an order of a State Court, accepting a *cessio bonorum* and staying further proceedings against an insolvent, will arrest the action of such foreign, as well as of home creditors.

APPEAL from the Tenth Judicial District Court, parish of Red River, Logan, J.

*J. D. Roach* for Plaintiffs and Appellants.

*L. D. Watkins* for Defendants and Appellees:

First—That a judgment is improperly signed after a debtor has made a cession of his goods. 14 An. 443.

Second—That the rights of all creditors should remain in the state they were at the date of the insolvency.

Third—That thereafter the suit should be cumulated with the proceedings in *concurso*.

Fourth—That when a debtor cedes his property to his creditors, and a stay of proceedings is granted, the cession operates the civil death of the debtor, and he cannot, consequently, remain a party in a suit. 1 M. 193, Elmes vs. Estovan; 3 M. 90, Syndic of Bermudez vs. Canez and Milne; 2 N. S. 307, Canez vs. Schooner Kinley; 14 An. 443, Lyons vs. McCray; and various other authorities cited in brief.

Fifth—The law governing the application and order for a stay of proceedings is different and distinct from that governing the discharge of the debtor, and its effects on creditors.

Sixth—That the stay of proceedings was necessarily granted in the judge's order of acceptance, and this proceeding has only the additional effect of enforcing this stay against these plaintiffs, non-resident creditors, and prohibiting them from obtaining a judgment in a court of this State during the pendency of the insolvency proceedings, in which they refuse to participate.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The plaintiffs, representing themselves as citizens of Missouri, claim from the defendants the amount of their note, dated at St. Louis on October 26th, 1878, and payable in New Orleans.

The suit was instituted on May 20th, 1879. A default was entered on November 6th following, and appears to have been confirmed on May 8th, 1880. The judgment was not regularly entered and has remained unsigned.

On the 13th following, the defendants entered an appearance for the *sole* purpose of averring that they, individually and as partners, had made a full, final and complete surrender of all their assets and property in accordance with the terms and provisions of the State insolvent laws, and obtained an order from the court accepting the same for the benefit of all their creditors, and ordering a *stay of proceedings*.

The evidence shows the verity of the facts averred by the parties. The *cessio bonorum* took place, and the order set up was made on May 8th, 1880, the day of confirmation of default. An attorney was thereby appointed by the court to represent the absent creditors of the insolvents, namely, those residing out of the State.

There was judgment sustaining the defense, reserving the rights of the plaintiffs to be exercised *in concurso* with the creditors of the insolvents. From this judgment the plaintiffs have appealed.

The question presented is as to the effect of the order *staying further proceedings* against the insolvents, as concerns creditors who were citizens of another State.

It is important to note that the insolvent laws now in force in this State were in existence in 1867, when Congress adopted a uniform system of bankruptcy. The operation and effect of those laws were suspended until September 1st, 1878, when the general bankruptcy law was repealed by Congress. This repeal vivified the State laws, in the meantime dormant.

The contract evidenced by the note sued on was, therefore, entered into after such repeal, after the State laws had again gone into operation.

The power of State Legislatures to pass insolvent laws cannot be doubted, provided there be no act of Congress establishing a uniform system of bankruptcy conflicting with their provisions, and provided the laws be so framed as not to impair the obligation of contracts.

Such State laws, however, cannot be constitutionally made to apply to contracts entered into before they were passed, but *may be made applicable to such future contracts as can be considered as having been made in reference to them.*

4 Wheat. 122; 5 How. 308; 6 Wheat. 131; 12 Wheat. 213; 1 Wall. 229; 4 Wall. 409; Cooley, Const. L. 359.

As there was no general Federal bankruptcy law in force at the time the note was issued, and the State laws revived by the repeal are not charged with being violative of the Constitution of the United States, prohibiting the passage by States of laws impairing the obligation of contracts, the case before us must be considered and dealt with as though the State of Louisiana were an independent sovereignty, unrestrained by any superior authority or power.

Under the well-settled jurisprudence, Federal, State and local, on the subject, it must be assumed, that when the plaintiffs contracted with the defendants, they knew them to be citizens of Louisiana, entitled to the protection of the laws of their State for the security of their persons, rights and property; and that the law of the State, at the time the contract was made, in effect provided that the obligation of the contract should not be absolute, but qualified by the condition that the party should be discharged upon his becoming insolvent and complying with the local insolvent laws.

They are presumed to have contracted in reference to those laws and to the jurisprudence expounding them, and to have impliedly assented that the contract was to be construed, governed and controlled thereby. There can be no other standard by which to ascertain the extent of rights and obligations, than that which the circumstances indicate, under which they were acquired or incurred. The qualifications attached to the contract by law the moment the contract was formed became inseparable from it and traveled with it through all the stages of its existence.

4 Wheat. 122; 12 Wheat. 213; 1 How. 311; 2 How. 608; 18 How. 431; 6 Otto, 448, 598; 96 U. S. 607; 4 Litt. 34, 47; 9 Cal. 81; 31 Penn. 175; 14 Rich. 148; 3 Mart. 531; 3 An. 337; Cooley, Const. L. 360; Bump. Const. notes, 121, 122, 155; Roser, Interstate C.

Now, by the insolvent laws of Louisiana, in existence when the contract was formed and which have not since changed, the defendants were entitled to make a surrender of their property to obtain a *stay* of proceedings and to make their absent creditors parties by constructive notice in the person of an attorney appointed to represent them *ad hoc*. The jurisprudence then was, and still is, that the order of a competent court accepting the surrender and *staying* all proceedings, preclude any creditor from instituting a suit in a State Court; that the State can exercise the fullest authority over her own tribunals, and prohibit citizens of other States from suing in them on contracts made either in or out of the State; that her insolvent laws extend to *all* persons, whether citizens of other States or foreigners, and that all contracts were declared affected by them, whether made to be performed in or out of the State. 5 An. 371; 8 An. 377; 10 An. 145.

The plaintiffs must, therefore, be taken as having contracted in reference to those laws and to that exposition of their meaning and purport, and to have consented to all contingent eventualities. Under those laws and that jurisprudence, the defendants were authorized to do that which they have done and to obtain the relief which was allowed them.

The citizens of this State are most unquestionably bound by those

proceedings; citizens of other States must alike be bound. They cannot be permitted to claim, and cannot be recognized as having rights, which would place them on a footing of superiority over those of this State. Were it otherwise, they would have it in their power to sue, recover judgment, levy on the surrendered property and satify themselves, in preference to local creditors, and thus nullify and set at naught the laws passed by the State for the protection of its citizens. A State Court, created by the State Constitution, whose jurisdiction is defined by State legislation, is bound to enforce State insolvency laws in the manner in which it is provided that they shall be.

We have considered the elaborate opinions in Ogden vs. Saunders, 12 Wheat. 213, which cover some hundred pages of the report, and the leading opinion in Baldwin vs. Hale, 1 Wall. 225.

The effect of those decisions is to hold, that the State insolvent laws can have no extra territorial operation, and when pleaded in bar to an action by citizens of a different State against an insolvent, brought in courts of the United States, or a different State from that whose insolvent laws are invoked, they will be disregarded by such courts.

These authorities do not impeach the authority and duty of the courts of each State to enforce their own insolvent laws against all parties whatsoever.

Finding, as we do, that the Supreme Court of the United States has accordingly considered the effect of a certificate of discharge, under a State insolvent law, to be, that it " *cannot be pleaded in bar of an action brought by a citizen of another State, in the courts of the United States, or of any other State than that where the discharge was obtained,*" we feel fortified in the conclusion, that the stay of proceeding, *multo fortiori*, can be enforced in this case. Gilman vs. Lockwood, 4 Wall. 410.

The plaintiffs are, therefore, impeded in the further prosecution of their suit. The judgment confirming the default must be considered a nullity or remain inchoate, according as it may have been rendered after or before the order staying proceedings was made.

It is, therefore, ordered and decreed that the judgment appealed from be affirmed with costs.

Mr. Justice LEVY recuses himself, having been of counsel.