## TUA *v.* CARRIERE & Others.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF LOUISIANA.

Submitted January 4, 1886.—Decided March 1, 1886.

In Louisiana, on the death of one of several members of a firm, the survivors may surrender their own undivided interests in the assets of the firm for the benefit of the creditors of the firm, but cannot surrender the interest of the deceased partner for that purpose; but, when such surviving members make such a surrender, purporting to include both their own interests therein and the interest of the deceased partner, and it is accepted by the court and acted upon in the manner provided by the law of the State, the action of the court therein is a judicial act, which cannot be attacked collaterally by an attaching creditor of the firm, interested in setting aside the proceedings for the purpose of retaining the lien of his attachment.

The insolvent laws of Louisiana were in force before and when the uniform Bankrupt Act of 1867 was enacted by Congress, and revived when that act was repealed.

A State insolvent statute, passed at a time when an act of Congress establishing a uniform system of bankruptcy is in force, is inoperative, so far as in conflict with that act, while the act is in force; but on its repeal, the State statute becomes operative.

The plaintiff in error brought this suit on August 18, 1884, on certain bills of exchange drawn by the firm of A. Carriere & Sons, on which he alleged there was due him the sum of $12,437. His petition stated that A. Carriere & Sons was a commercial firm lately doing business in New Orleans, composed of Antoine Carriere, Emile L. Carriere, and Charles J. Carriere; that Antoine Carriere had departed this life on June

4, 1884, testate, and that Olivier Carriere and Emile L. Carriere had been appointed his executors. The petition alleged as a ground for the issue of a writ of attachment that the defendants had converted, or were about to convert, their property into money or evidence of debt, with intent to place it beyond the reach of their creditors, and prayed that the writ might issue against the property, goods, and effects of the firm of A. Carriere & Sons, and of Emile L. Carriere and Charles J. Carriere; that said firm be cited, and the individual members thereof, Emile L. and Charles J., and Antoine Carriere, through his testamentary executors, Olivier Carriere and Emile L. Carriere, and, after due proceedings, that judgment be rendered in favor of petitioner and against A. Carriere & Sons and the members of said firm *in solido* for the amount due on the bills of exchange, " with lien and privilege on the property attached."

In accordance with the prayer of the petition a writ of attachment was issued, and, as appears by the marshal's return, was levied on certain property and effects already in his custody on other writs of attachment. Afterwards, one James M. Seixas filed his intervention and opposition in the cause, in which he averred that on July 18, 1884, the defendants, A. Carriere & Sons, made a cession of all their property to their creditors in the Civil District Court of the Parish of Orleans, which was accepted by the court for their creditors; that the petitioner was appointed by the court, and on August 21, 1884, was elected by the creditors and qualified as syndic of said insolvent estate, and as such had title and right of possession to the goods seized by the marshal, and that the property was not subject to attachment, and prayed that the attachment might be dissolved. Olivier Carriere, as executor of Antoine Carriere, joined in the petition and intervention of Seixas, and prayed for the dissolution of the attachment.

Emile L. and Charles J. Carriere filed for themselves individually, and for the firm of A. Carriere & Sons, an answer, in which they averred that individually, and in behalf of A. Carriere & Sons, they had, on July 18, 1884, in the Civil District Court of the Parish of Orleans, surrendered all their assets to their creditors, and the surrender had been accepted by the

court, and their creditors, and they prayed that the attachment might be dissolved.

The plaintiff filed an answer to the intervention of Seixas, in which he denied that the latter was the syndic of Carriere & Sons, averred that the property attached was in the hands of the United States Court, and that Seixas never had any control over the same, and had no right to disturb the possession of the United States Court.

Upon the issues thus raised upon the original petition of the plaintiff and the intervention of Seixas, the case was tried by a jury, which returned a verdict for the plaintiff for $12,437.-82, and that the attachment be dissolved.

It appeared from a bill of exceptions taken upon the trial that evidence was given tending to show that the firm of A. Carriere & Sons was composed of Antoine Carriere, Emile Carriere, and Chas. J. Carriere; that Antoine Carriere departed this life on the 4th day of June, 1884, and Olivier Carriere was appointed his testamentary executor, and that Emile L. and Chas. J. Carriere, individually, and as surviving members of A. Carriere & Sons, took, on the 18th day of July, 1884, the benefit of the insolvent law of Louisiana, and filed schedules of their individual assets and liabilities, and of the assets and liabilities of the firm of A. Carriere & Sons; that at the meeting of the creditors J. M. Seixas was appointed and qualified as the syndic of Emile L. and Chas. J. Carriere, individually, and as surviving members of the firm of A. Carriere & Sons; that their creditors refused them a discharge either individually or as surviving members of said firm; that said syndic was appointed prior to the attachment in this case, and that the attachment was levied subsequent to the refusal to discharge the said Emile L. and Chas. J. Carriere; that the attachment was levied on property already in the hands of the marshal by virtue of attachments issued prior to the 18th of July, 1884, and that said prior attachments were dissolved by the court on the day of the trial. Thereupon the court charged the jury that " the cession shown in this case is made by E. L. Carriere and Chas. J. Carriere, individually and as surviving partners of A. Carriere & Sons, and by operation of law carries into the surrender all their individ-

ual property and all the property of the firm, and that the effect of the cession and proceedings thereunder, was to stay and practically dissolve all attachments then issued against the said surrendering partners, and all property surrendered in the State courts by direct operation of State laws, and in the national court by force of section 933 Revised Statutes." The plaintiff excepted to this charge. The court gave effect to the verdict of the jury by rendering judgment in favor of the plaintiff for $12,437.82, and dissolving his attachment. Thereupon the plaintiff sued out a writ of error to bring under review that part of the judgment of the Circuit Court which dissolved his attachment.

*Mr. Charles Louque* for plaintiff in error.

*Mr. Thomas L. Bayne* for Seixas, defendant in error.

Mr. JUSTICE WOODS delivered the opinion of the court. After stating the case as above reported, he continued:

It is not disputed that if the insolvent law of Louisiana was a valid law, and the surrender made by the surviving partners of the dissolved firm of A. Carriere & Sons was a valid surrender of the effects of the firm, the attachment of the plaintiff was rightfully dissolved. For, under the law of Louisiana the effect of a cession of property by an insolvent person is to dissolve all attachments which have not matured into judgments. Code of Practice, Art. 724; *Hannah* v. *His Creditors*, 12 Mart. 32; *Fisher* v. *Vose*, 3 Rob. (La.) 457; *Collins* v. *Duffy*, 7 La. Ann. 39. And by section 933 of the Revised Statutes of the United States, an attachment of property upon process instituted in any court of the United States is dissolved when any contingency occurs by which, according to the law of the State where the court is held, such attachment would be dissolved upon the process instituted in the courts of said State.

But the plaintiff insists that the partnership of Carriere & Sons having been dissolved on June 4, 1884, by the death of Antoine Carriere, the surviving members of the firm had no

power to surrender the assets of the firm for the benefit of its creditors, and the plaintiff's attachment of said assets was therefore good.

We agree that the attempt of the surviving partners to surrender the share of their deceased partner in the assets of the firm dissolved by his death was not authorized by law, unless by consent of the heirs, or for some other reason not disclosed by this record. For, under the jurisprudence of Louisiana, upon the death of a member of a partnership, the title to his interest in the partnership effects descends to his heir, and does not vest in the survivor. The law of Louisiana on this point is stated and illustrated by the following decisions of the Supreme Court of that State:

In the case of *Simmins* v. *Parker*, 4 Martin N. S. 200, 207, the court said: "We think the power of the surviving partner to alienate the property belonging to ". the partnership " ceased with the dissolution ; that the heirs of the deceased " partner "became joint owners of the common property, and that the utmost effect that can be given to a transfer " by the surviving partner " is to consider it as disposing of all the right which the vendor had in the thing sold."

In *Shipman* v. *Hickman*, 9 Rob. (La.) 149, it was held that after the death of a member of a partnership the partnership property was owned in common by the representatives of the deceased partner and the surviving partner, and that the interest of the representatives of the deceased could not be disposed of or alienated by the surviving partner.

So in *Notrebe* v. *Kenney*, 6 Rob. (La.) 113, it was said: " Our laws recognize no authority in a surviving partner. He cannot administer the partnership effects until regularly appointed, nor is he then surviving partner, but administrator."

In *Norris* v. *Ogden*, 11 Martin, 455, the court held that the heirs of a commercial partner have a right to participate with the survivor in the liquidation until a partition ; if a partner sues for a partnership claim the others may be made parties to secure their rights.

" In commercial partnerships," say the court in *Flower* v.

*O'Conner*, 7 La. 194, "the survivor, to receive the deceased partner's share and hold it subject to partnership debts, must apply to the probate court, have the portion ascertained and valued, and give security."

In *Shipwith* v. *Lea*, 16 La. Ann. 247, it was held that at the death of a partner his interest in the firm is vested in his heirs-at-law, and the surviving partner can only acquire that interest by transfer or assignment from the heirs. See also *Pickerell* v. *Fisk*, 11 La. Ann. 277; and *McKowen* v. *McGuire*, 15 La. Ann. 637.

But while it must be conceded that the cession made by the surviving members of the· interest of Antoine Carriere, the deceased partner, in the assets of the firm, was not authorized, unless for some reason appearing to ˌthe court, but not shown by this record, we are of opinion that the validity of the cession cannot be attacked in this collateral way. The cession of the surviving partners carried their own undivided interest in all the partnership effects, and it purported to carry the interest ·of the deceased partner. The surrender was accepted by the court, which, by the appointment of a syndic, undertook the administration of all the property of the late firm of A. Carriere & Sons. It is not disputed that the court had jurisdiction over the subject-matter and the parties interested. It had jurisdiction, and it was its duty to decide whether the cession of the effects of the partnership was valid and effectual, and what property it conveyed. The fact that the heirs of Antoine Carriere did not join in the cession does not render the orders of the Civil District Court void. The judgment of that court accepting the cession of the property and appointing a syndic could only be reversed in a direct proceeding. This is the well settled law of Louisiana. It has been held by the Supreme Court of that State that the order of a court accepting a cession of goods under the insolvent laws, and the staying of proceedings, is a judgment which demands the exercise of legal discrimination, and· which, when granted, can be set aside only by appeal or action in nullity. *State ex rel. Boyd* v. *Green*, 34 La. Ann. 1027. So in *Cloutier* v. *Lemée*, 33 La. Ann. 305, the same court said, "The judgment of the Civil District Court

accepting the cession of the property and appointing a syndic cannot be collaterally attacked."

In *Nimick & Co.* v. *Ingram*, 17 La. Ann. 85, the facts were that Ingram had made in the Fifth District Court a surrender of his property for the benefit of his creditors, among whom were Nimick & Co. The court accepted the cession and stayed all proceedings against his person and property. After these events Nimick & Co. caused an execution to be issued on a judgment which they had recovered against Ingram in the Fourth District Court, and under it seized certain property which they charged was the property of Ingram, and in his possession. Thereupon Ingram took a rule upon Nimick & Co. in the Fifth District Court, where the insolvency proceedings were pending, requiring them to show cause why they should not respect the order of that court suspending proceedings against him, and why all further action upon the execution sued out by Nimick & Co. should not be stayed. The rule was upon trial made absolute, and Nimick & Co. appealed. In the Supreme Court they urged that by their diligence and vigilance they had discovered the property seized by them, which had never been surrendered by the insolvent debtor, and having thus made it available, had the right to appropriate it to the satisfaction of their claim. Upon the case thus stated, the court said: "However irregular the proceedings in insolvency may have been, and however fraudulently the debtor may have acted, the plaintiffs could not on that account disregard the decree of the court which stayed all judicial proceedings against the insolvent and his property. They were parties to the proceedings, and were bound to respect them. . . . Any informality in the proceedings when questioned must be by direct action. No creditor will be permitted to disregard and treat as an absolute nullity a judgment accepting a surrender made by his debtor and granting a stay of proceedings. . . . The acceptance for the creditors by the court of the ceded estate vests in them all the rights and property of the insolvent, whether placed on the schedule or not, and the syndic may sue to recover them. But any creditor may show, provided it be contradictorily with the mass of the creditors or

their legal representatives, that any particular object or fund is not embraced in the surrendered estate, but is subject exclusively to his individual claim. And this is the remedy of the plaintiffs if they have any." See also *Haney* v. *Healey*, 14 La. Ann. 424.

This is in accord with the general rule that when property is in the possession of one court for administration it is not liable to be seized by process from another. *Taylor* v. *Carryl*, 20 How. 583; *Freeman* v. *Howe*, 24 How. 450; *Buck* v. *Colbath*, 3 Wall. 334; *Peoples' Bank* v. *Calhoun*, 102 U. S. 256; *Krippendorf* v. *Hyde*, 110 U. S. 276.

If there was any defect or informality in the surrender, the remedy of the plaintiff was, first, to apply to the court in which the surrender was made to set aside its order accepting the surrender and appointing a syndic. The plaintiff could not seize the property the administration of which the Civil District Court had accepted, as if no surrender thereof had been attempted. *Tyler* v. *Their Creditors*, 9 Rob. (La.) 372; *Harris* v. *Knox*, 10 La. 229.

The property surrendered to and accepted by the Civil District Court included the undivided shares therein of the surviving partners. The cession of their shares was valid. Of this there can be no question. This gave the syndic appointed by that court the right to the possession of the whole. It was impossible for that court to perform its duty in respect of the property surrendered if its possession was disturbed. But the plaintiff, assuming the cession to be void *in toto*, and giving it no effect even as to the shares of the surviving partners who made it, contends that he can attach the entire interest of all the partners, and apply all the proceeds of the property to the payment of his debt to the exclusion of other creditors. His attachment was made with this purpose. It could not be effectual except by actual seizure and detention of the property attached. *Nelson* v. *Simpson*, 9 La. Ann. 311. In this case the property was seized on the attachment after the Civil District Court had accepted the surrender of the entire assets of the dissolved partnership, and after the property was constructively in its possession. We think the writ was improvidently

issued and the levy invalid and ineffectual, and the attachment was properly dissolved, unless, as is next contended by the plaintiff in error, the insolvent law of Louisiana is of no force or effect.

This position is based on the assertion that the insolvent law of Louisiana was passed while the general bankrupt act of the United States was in force, and as the provisions of the two acts were inconsistent, the insolvent law was invalid and void.

The plaintiff in error concedes, as well he may, that, if the insolvent law of Louisiana had been enacted before the passage of the bankrupt act, it would have been valid, and that the effect of the bankrupt act would have been to suspend it only while the bankrupt act remained in force, and on its repeal the insolvent law would have revived. *Ward* v. *Proctor,* 7 Met. (Mass.) 318; *Lothrop* v. *Highland Foundry,* 128 Mass. 120; *Orr* v. *Lisso,* 33 La. Ann. 476. But he asserts that the insolvent law of Louisiana was passed while the bankrupt act of the United States was in force, and was, therefore, invalid and void, and so continued after the repeal of the bankrupt act. We do not agree with either the premises or the conclusion. The Supreme Court of Louisiana, in the case of *Orr* v. *Lisso,* 33 La. Ann. 476, which was decided in April, 1881, held "that the insolvent laws now in force in this State were in existence in 1867, when Congress adopted a uniform system of bankruptcy." And the court added: "The operation and effect of those laws were suspended until September 1st, 1878, when the general bankrupt law was repealed. This repeal vivified the State laws in the meantime dormant." A reference to the statutes of Louisiana shows that the insolvent law was first enacted in 1817 (see acts of the first session of the Third Legislature of Louisiana, begun November 18th, 1816, page 126), it was carried into the revision of 1855 (see Revised Statues of Louisiana of 1856, pp. 251–259), and included in the revision of 1870 (see Revised Statutes of 1870, page 353), and still remains upon the statute book (see Voorhies' Revised Laws of Louisiana, 1884, pp. 279–288). The act as it appears in the revision of 1855 is substantially the same as in Voorhies' Revised Laws of 1884. The circumstance alleged by the plaintiff that in the

revision of 1870 the insolvent law was formally reënacted is entirely immaterial. If those laws had then been enacted for the first time, they would, so far as inconsistent with the bankrupt act, have been inoperative while that act remained in force, but upon its repeal would have come into operation. The enactment of the insolvent law during the life of the bankrupt act would have been merely tantamount to a provision that the former should take effect on the repeal of the latter. It follows that since the repeal of the bankrupt act all the provisions of the insolvent law of Louisiana have been valid and operative.

Although, as appears from what we have said, the charge of the court did not accurately state the effect of the cession by the surviving partners of the assets of the dissolved firm of A. Carriere & Sons, yet it is clear that upon the law and the facts the verdict of the jury was right. The error of the court, therefore, works the plaintiff no injury, and does not require a reversal of the judgment dissolving the attachment. *Brobst* v. *Brock*, 10 Wall. 519; *Phillips Construction Co.* v. *Seymour*, 91 U. S. 646.

*Judgment affirmed.*