SHWARTZ et al. v. H. B. CLAFLIN CO.

KERN et al. v. SAME.

(Circuit Court of Appeals, Fifth Circuit. December 23, 1893.)

No. 159.

1. DESCENT AND DISTRIBUTION—LIABILITY OF HEIRS—ABATEMENT.
   Under Code Pr. La. art. 120, which declares that, upon death of a defendant pending suit, the suit shall not abate, but shall be continued against his heirs by notice served on them, but that judgment can only be given against each heir for his share of the inheritance, it is error to render judgment against all the heirs in solido on service of notice, but without appearance by them, or entry of default against them, or submission to a jury of any issue as to their heirship and responsibility.

2. ATTACHMENT—DISSOLUTION—INSOLVENCY—FEDERAL COURTS.
   Under Rev. St. U. S. § 933, declaring that attachments in the federal courts shall be dissolved by any cause which would dissolve similar attachments in the state courts, an attachment is dissolved in Louisiana by an accepted cession of the attached property to creditors under the insolvency laws of that state.

3. SAME—PLEADING.
   Such a dissolution of an attachment may be pleaded by the insolvents and by interveners who claim the attached property as purchasers prior to the cession, as well as by the syndic.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

Attachment by the H. B. Claflin Company against H. Kern & Son. An intervention was filed by A. Shwartz & Sons. Plaintiff obtained a personal judgment. Defendants and interveners bring error.

Suit was brought by the H. B. Claflin Company against H. Kern & Son, in the circuit court of the United States, to recover $21,728, due the plaintiff on certain notes. A writ of attachment issued, under which the marshal seized the stock of goods in the store formerly occupied by defendants. Shwartz & Sons were also made garnishees, as alleged debtors of Kern & Son. On the 23d of February, 1892, the day after the seizure, Shwartz & Sons filed a

petition of intervention, claiming to be owners of the goods seized, and, on the day following, obtained a release of their property upon executing a forthcoming bond in favor of the marshal in the sum of $35,000. They also made answer to the garnishment. On the 4th of March, Kern & Son filed an exception to the suit, alleging that they had been granted a respite by the state court, and at the same time moved to dissolve the attachment. On the 5th, H. B. Claflin Co. filed a general denial to the intervention of Shwartz & Sons, coupled with a special allegation that the property seized was the property of Kern & Son, and liable to be attached for their debts. The motion of Kern & Son to dissolve the attachment, upon the issues then presented, was tried by a jury, and the attachment sustained. On December 6, 1892, Shwartz & Sons moved to dissolve the attachment on the ground that the defendant had been adjudged insolvent by the state court, and on the 10th of December supplemented this motion with another, referring to the cession of December 8, 1892. On December 6, Victor Mauberret, alleging himself to be provisional syndic, moved to set aside the attachment for the same reason. The court also on the same day gave judgment against Kern & Son for the amount of the debt. On the 8th Kern & Son moved for a new trial, which was granted on the 28th. Thereupon, all parties, by a stipulation dated January 10, 1893, waived trial by jury, and submitted the main cause, together with the intervention of Shwartz & Sons, for trial by the court. On the same day H. B. Claflin Co. discontinued the garnishment proceedings against Shwartz & Sons. On March 3, 1893, Kern & Son presented and asked leave to file a motion to dissolve the attachment, setting up their adjudication as insolvents. Leave to file was granted April 21st. The case then stood in this attitude: At issue between the Claflin Company and Kern & Son as to the debt, and upon the motion to dissolve the attachment; at issue between the Claflin Company and Shwartz & Sons on their intervention, and on their motion to set aside the attachment. Upon these issues the cause was tried before the court, and submitted March 3, 1893. On March 10th following, the counsel for plaintiff, in writing, suggested to the court that since the trial and submission of the cause Emile Kern, a member of the firm of H. Kern & Son, and one of the defendants, had departed this life, as appeared by affidavit presented, and on further suggesting to the court that said Emile Kern died intestate, that he was unmarried, and that his sole heirs were Henry Kern, his father, and Mrs. Henry Kern, his mother, and that they, being the heirs of said deceased, should be made parties to the cause, it was ordered "that Henry Kern and Mrs. Henry Kern be made parties hereto; that a duly-certified copy hereof be served upon them, and that whatever judgment be rendered in this cause be rendered for or against said heirs representing said Emile Kern;" and on the same day a copy of the said motion was served upon both Mr. Henry Kern and Mrs. Henry Kern, but neither thereafter appeared in said cause as heirs or representatives of Emile Kern, nor was any default entered against them, nor any issues as to their said heirship and responsibility in the case submitted to a jury. The court, upon consideration, April 21, 1893, filed the following document, headed "Opinion of Court, Finding of Fact, and Conclusions of Law":

"Circuit Court of the United States, Eastern District of Louisiana.

"H. B. Claflin Co. v. H. Kern & Son (A. Shwartz & Sons, Interveners).

### No. 12,059.

"Billings, Judge. On February 20, 1892, the following contract was entered into between the defendants and interveners:

#### " 'Agreement.

" 'This agreement, entered into this 20th day of Feb., 1892, between H. Kern & Son, of the first part, and A. Shwartz & Sons, of the second part, witnesseth: The said H. Kern & Son agree to sell to said A. Shwartz & Sons, who bind themselves to purchase, the entire stock in trade, merchandise, fixtures, and all the appurtenances of the dry-goods store, corner of Canal and Dauphine Sts., with no other exception than one iron safe, one desk, and one stove. This sale is to be made on the following basis, viz.: First. All piece goods

having over ten yards and all other merchandise upon which the cost price shall be marked to be taken at said cost, less ten per cent. upon the aggregate amount. Second. All remnants or piece goods measuring less than ten yards shall be taken at the selling price, less fifty per cent. upon the aggregate amount. Third. All piece goods measuring more than ten yards and other merchandise upon which the cost price is not marked shall be taken at the selling price, less twenty-five per cent. upon the aggregate sum. Fourth. The invoices for all goods in transit, purchased by said.H. Kern & Son, shall be turned over to the purchasers, who, upon delivery of said goods, shall assume the amount of said invoices, and be responsible therefor. Fifth. All the furniture, tools, and fixtures (save those above mentioned) shall be accepted for the price of one thousand dollars. Sixth. In order to expedite the ascertainment of the price of the within sale, the said parties of the first and second parts shall put at once as many clerks as they may deem necessary (satisfactory to both parties) to measure all unmeasured piece goods and count all other merchandise; thereupon persons representing both parties shall call off the said merchandise to others likewise representing both parties (in such manner as complete fairness shall exist), who shall enter the merchandise in books numbered alike, a copy of which to belong to either party. As soon as the entire stock shall have been thus entered, the parties of the first and second part shall proceed, without unnecessary loss of time, to the ascertainment of the value of said stock of merchandise on the basis above established, which value shall be thereupon paid in cash by said A. Shwartz & Sons to said H. Kern & Son. Seventh. The book accounts are not included in this sale, but shall remain the property of said H. Kern & Son, and, for the purpose of facilitating the settlements of said firm and the collections, they shall be allowed the use of space within the building for a reasonable time, free of rent. Eighth. The said A. Shwartz & Sons shall enter into immediate possession of the said stock of merchandise, and be permitted to dispose of the same as they may deem best, after the said goods shall have been duly entered as stipulated in paragraph sixth; nor shall any delay in the ascertainment of the total of the amount of the present sale delay the delivery of said goods to said A. Shwartz & Sons. Ninth. The lease to the building shall be transferred to said A. Shwartz & Sons by said H. Kern & Son, who shall obtain the consent of the owner thereto. Tenth. In order to bind the present sale and agreement, the said A. Shwartz & Sons have presently paid to the said H. Kern & Son, who acknowledge the receipt thereof, the sum of forty thousand dollars. It being well understood that in the event the stock, etc., hereby sold should be found, under the present agreement, to be worth less than that sum, the said H. Kern & Son shall make good the difference; likewise, should the said stock, etc., be found to exceed the amount herein paid, the said A. Shwartz & Sons shall pay said difference to H. Kern & Son, as soon as ascertained. [Thirty-three words erased, null and void.] At the moment of signing it was agreed that in case of disagreement, in the carrying out of the present agreement, between the parties of the first and second parts, the matter in difference shall be submitted to arbitration; Henry Beer to act on the part of H. Kern & Son, and Gus. Lehman, Sr., to act on the part of A. Shwartz & Sons, these two to appoint an umpire, the parties to abide by the award of the majority of the arbitrators.

" 'Signed in presence of      H. Kern & Son.
" 'F. J. Dreyfous.      Emile Kern.
" 'G. Lehman.      A. Shwartz & Sons.'

"The 20th of February fell on Saturday. At from half past seven to eight a. m. on Sunday morning, February 21st, the measuring and counting of the merchandise commenced; it was continued during Sunday and into Monday. The levy of the attachment by the marshal was made on Monday afternoon between 2:15 and 2:30. As to the time when the measuring, counting, and entering in the nine books duplicated, without the extension of the price, were completed: On this issue, on the part of the interveners, 29 witnesses were called. Nineteen testify that they, individually, completed their work, before the time of the levy of the writ, one testifies that he does not remember the time, one testifies that his work was completed on Monday evening,

or after the levy, four, who were not engaged in taking the inventory, and who were not there Sunday or Monday, but reported Tuesday for work, did not know of their own knowledge the time that the inventory was completed, but didn't see any inventorying going on in their department, one testifies that the inventory was completed before the levy, and the two Messrs. Shwartz's testimony is to the effect that, while the entries were not entirely completed, there being some things left unfinished, the entries were made before the levy. On the part of the plaintiff, 16 clerks testify that they completed the measuring and the counting and entering not till after the time of the levy, one testifies that he completed his work before the levy, one testifies that the clerks were measuring and counting goods after the levy, and two do not remember the time. The chief deputy marshal testifies that the measuring was going on after the levy was made. Another deputy testifies that they were unrolling goods and taking down goods from the shelves and placing them on the counter. He says he judges they were measuring. A third deputy, who was not there Monday, but was there Tuesday, does not testify as positively as the others, but says they were taking down goods from the shelves and putting them on the counter, but does not testify that on Tuesday they were counting or measuring. Capt. Donally, the United States marshal, testifies that Monday evening he was at the store, and heard them quarreling and contending about the quantity or measurement of goods. The senior Mr. Kern, one of the defendants, testified that the measuring and the counting were concluded at 5 or 6 o'clock Monday evening. It is to be observed that twenty-three witnesses testify to the completion of the measuring and counting before the levy of the writ; 24 testify, to the contrary, that the levy was made before the counting or measuring was finished. Of the 23 witnesses, 21 were clerks now in the employ of the interveners, and two were the interveners. Of the 24 witnesses nine were in the employ of the defendants, eight were formerly, but not now, in the employ of the interveners, two are now in the employ of the interveners, four were the marshal and his deputies; the remaining one was the senior defendant, Kern. This summary shows that the preponderance of testimony is against the claim of the interveners, and in favor of that of the plaintiff, and I find, as a fact, that the levy of the writ of attachment was made before the measuring, counting, and entering, without extension of the price of the goods, was completed. I find further, as facts, that on Saturday two checks, amounting in the aggregate to $40,000, were delivered by the interveners to the defendants as the estimated price of the whole stock of goods agreed to be sold. That on Sunday morning the defendants delivered the keys of the store to the interveners, who opened the store with them on Monday morning. That on Monday, after the levy of the writ of the plaintiff, neither of the two checks having been presented for payment, and not having been paid, an agreement was entered into between the interveners and the defendants that the whole of the purchase price of the goods sold, except the twenty-five hundred belonging to G. Lehman, should be deposited with and held by F. J. Dreyfous in trust, to protect A. Shwartz & Sons from loss in case their title to the stock of goods should not be maintained. That it appears from the evidence that from this amount so deposited with Dreyfous, payments were made on the drafts of the defendants, so that the amount was reduced to $27,415.-56, down to May 2, 1892, and that subsequently this last amount was turned over to W. S. Benedict, Esq., who received the same, and holds and has paid a portion of the same, as appears from his statement:

" 'The H. B. Claflin Co. v. H. Kern and Son et al. No. 12,059. U. S. Circuit Court.

" 'Statement of W. S. Benedict.

" 'There was no written contract respecting the trust established by H. Kern & Son, in view of the attachment, to protect A. Shwartz & Sons. The check for $37,500, which has been offered in evidence, was held by F. J. Dreyfous as trustee under this trust, and from its proceeds various payments were made by H. Kern & Son down to May 2, 1892. Mr. Dreyfous, having retired from the trust, the balance of $27,415.56 was turned over to me as

money of H. Kern & Son, to be held in trust for the same purpose, viz. to protect A. Shwartz & Sons from danger of double liability in the premises.

| | | | |
|---|---|---:|---:|
| By consent of H. Kern & Son, the following sums were paid from the said fund of.................... | | | $27,415 56 |
| viz.: (1) Stenographer's fees...................... | $ 368 15 | | |
| (2) J. A. Mercier, rent due by H. Kern & Son on the Canal street store up to sale of Feb. 20, 1892........................... | 7,083 33 | | |
| (3) P. Roberts & B. Titche, attorneys of H. Kern & Son........................... | 1,000 00 | 8,451 48 | |
| Balance .................................... | | | $18,964 08 |

" 'A balance of $18,500, funds of H. Kern & Son, is held by me under the trust to protect A. Shwartz & Sons in the premises. The further balance of $464.08 is also in my hands, less payments for disbursements incidental to the trust.     W. S. Benedict.'

"That it also appears that the defendants, after their insolvency, gave information as to this amount so held, surrendered by Mr. Dreyfous and Mr. Benedict to the insolvency court, and the terms and conditions upon which it was deposited and held. The facts as to the defendants' adjudication as insolvents and the proceedings in the insolvent court appear in the findings of the court upon the motions for a new trial filed December 17, 1892, which are adopted and made part of these findings. Upon these facts two questions arise: But for the peculiar arrangement as to the disposition of the price of these goods, and laying that for the time being out of consideration, would the sale have been complete? and would the title to the goods have passed to the interveners? There had been a delivery symbolical and actual; $40,000 had been given in checks as the estimated price which was to be ascertained by measuring and counting, and the price increased or diminished, and paid or returned, accordingly. I think, laying aside the consideration of the agreement as to price, the case of Shuff v. Morgan, 9 Mart. (La.) 592, is in substance this case. In each case there was a delivery, and nothing remained to be done but the ascertainment of quantity. Articles 2458 and 2459 are but re-enactments of articles 6 and 7 under title 6, p. 346, Code 1808. In the case of Shuff v. Morgan, the court held that the rule res periit domino was a general but not a universal one; that, with complete title in the vendee, for him to run the risk of the destruction of the property sold was of the nature, but not of the essence, of the contract of sale, and that the reservation by the statute of the risk in the vendor did not prevent the title to the thing agreed to be sold passing to the vendor so as to prevent a creditor of the vendor from making a valid attachment. There is nothing peculiar in the provision in the contract of sale in this case. It was in substance the same as in Shuff v. Morgan. The whole effect of paragraph 8, when considered in connection with paragraph 6, is that the stock of goods was sold, and the title was vested in the vendors, the interveners. There was to be a tale of the goods to determine the exact amount of the price. The case of Shuff v. Morgan was decided in the year 1824, and has never been overruled or called in question. So that, so far as concerns the provision as to the tale, the property would have passed. There remains the question as to what the court must say as to the effect of the arrangement about the price. The facts necessary to be considered are these: A debtor is in failing circumstances; a sale of his whole stock of goods is made. The consideration is $40,000. For this amount, checks are given. Before the checks are paid or presented, a creditor levies an attachment. By a secret agreement between the seller and the purchaser, the whole price ($40,000) is placed in trust in the hands of a third person to indemnify the purchaser against loss by service of the attachment. The legal effect of such a qualification of an agreement to sell is to subordinate the question of who shall receive the consideration to the question as to the validity of the sale. The trustee holds in trust for the vendor in case the sale shall be held to be valid, and for the vendee in case it shall be held to be void, and it

is a secret trust. In the eyes of the creditors the property has been placed beyond the reach of the creditors by the sale; by this secret trust the consideration for the sale also is placed beyond their reach. It is a sale if the attachment is defeated, and no sale if it is maintained. To render a sale valid there must be price. That price cannot conditionally belong to the purchaser. Nor can the indications of a payment be held out which are not according to fact, when the necessary effect of such indications must be to baffle the creditors of the vendor. I think such a transaction, before the checks have been paid, ingrafts onto the sale a qualification which becomes a part of the original agreement of sale, and characterizes it precisely as if it had been made along with it, and that courts must declare a transaction with such a feature invalid and ineffectual to defeat the rights of the attaching creditor to the extent of his attachment. The conclusions of law from the facts above found are: (1) That the attachment was dissolved by the insolvency proceedings in which the defendants made, and the proper court accepted, a surrender, of all their property. Section 933, Rev. St., 9 Stat. 213, 214, especially the intent and meaning of the statute as shown in the title and as declared in the body of the act. (2) That the plaintiffs have and recover against the defendants $21,728.00, with interest as prayed for in their petition, and their entire costs in the cause and upon the attachment up to the time of the surrender, without any lien or privilege resulting from the attachment. (3) That the intervention of A. Shwartz & Sons be dismissed, and that they pay the costs of the intervention. The court finds as further facts, as follows: That Monday, February 22, 1892, was a legal holiday, and, under the state law, the banks in New Orleans were closed. Also, that the interveners' store on the corner of Bourbon and Canal streets was burned on the 17th of February, 1892, and that they were seeking for another store and stock of goods to continue their business and employ their clerks.

"[Signed]                          Edward C. Billings, Judge."

Upon this opinion, findings, and conclusions of law, formal judgment was rendered the same day in favor of H. B. Claflin Co., plaintiffs, against H. Kern & Son, and in solido against Henry Kern and against the legal heirs and representatives of Emile Kern, made parties in this cause, in the full and entire sum of $21,722, with interest, etc. This judgment gave no privilege upon the goods attached, but contained the following special clause: "It is further ordered, adjudged, and decreed, for the reasons assigned in the opinion of the court filed this day, that the agreement of February 20, 1892, herein, did not transfer to the interveners, A. Shwartz & Sons, the property attached, so as to affect the rights of plaintiffs as attaching creditors of the defendants herein, and that the said intervention be, and the same is hereby, dismissed at interveners' cost." The November term of the circuit court ended April 22, 1893, the day said judgment was signed. But on the 2d day of May, the circuit judge made and filed additional findings of fact. The record shows that these additional findings were made at the request of counsel for H. B. Claflin Co. and against the objections of Shwartz & Sons at the time the writ of error in this case was applied for, and that the filing of them was duly excepted to by Shwartz & Sons. H. Kern & Son, Henry Kern and Mrs. Henry Kern, and Shwartz & Sons have brought the case here by writs of error. The errors assigned by Shwartz & Sons are as follows: "(1) The court, having found, as a matter of fact and as a conclusion of law, that the attachment issued herein was set aside and dissolved by the insolvency and cession of the defendants in the cause, under the insolvent laws of Louisiana, in the state court, (No. 33,424, civil district court, parish of Orleans,) on the 8th of December, 1892, erred in proceeding to adjudicate on the title of the interveners to the property seized under the said process of attachment. (2) The court, having found the attachment herein was set aside and dissolved December 8, 1892, erred in not directing the delivery of the property attached to the interveners, from whose possession it was taken. (3) The court, having found as a matter of fact and law that the attachment herein was dissolved and set aside December 8, 1892, erred in assuming to decide on the title of interveners to the property which had been seized under said attachment, when there was no longer any issue remaining in the cause as to

such title. (4) The court erred in decreeing that the sale of their stock of merchandise, and the delivery thereof by the defendants, H. Kern & Son, to the interveners, A. Shwartz & Sons, did not vest the title thereto in said interveners; and the court erred in dismissing their intervention. (5) The court erred in decreeing that the agreement of February 20, 1892, herein, did not transfer to the interveners the property attached so as to affect the rights of the plaintiffs as attaching creditors of the defendants herein. (6) On the facts found and conclusions stated by the court, and the motions pending in the record, the court erred in not formally decreeing in the judgment that the attachment was dissolved and set aside December 8, 1892, by the insolvency and cession of the defendants in the cause in the civil district court for the parish of Orleans, No. 33,424. (7) The finding of facts having been made, and the judgment therein having been rendered on the 21st day of April, 1893, and signed on the 22d day of April, 1893, at and during the November term of the circuit court, which expired on the 22d day of April, 1893, the court erred in amending said finding of facts, and in finding additional facts, against the objections of the interveners, after said term had passed, and ordering the same to be filed at the April term following, to wit, on the 2d day of May, 1893."

The errors assigned by H. Kern & Son and Henry Kern and Mrs. Henry Kern are as follows: "(1) The court erred in rendering any judgment against Mrs. Henry Kern and against Henry Kern, as heirs of Emile Kern, or as legal representatives of Emile Kern, inasmuch as they were, as such heirs, never made parties to these proceedings. (2) The court erred in rendering any judgment against said Mrs. H. Kern, as heir or legal representative of said Emile Kern, because there were no proceedings conducted contradictorily with her in this cause. (3) The court erred in rendering judgment against said H. Kern and Mrs. H. Kern as one of the heirs or legal representatives of Emile Kern, because no evidence whatever was offered, nor is there any evidence whatever in the record, to show or establish that said Mrs. Kern is the heir or one of the heirs of said Emile Kern, or that she is the legal representative of said Emile Kern, or has in any manner accepted his succession. (4) The court erred in rendering judgment against said Mrs. Henry Kern, as heir or legal representative of Emile Kern, because plaintiff does not allege that she is the succession representative of Emile Kern, or that she has accepted his succession. (5) The court erred in rendering judgment against said Mrs. H. Kern in solido with H. Kern & Son and H. Kern and Emile Kern, because, if sued as the heir, she could under no circumstances be condemned for more than her virile share. (6) The court erred in rendering a judgment against said Mrs. H. Kern as heir or legal representative of Emile Kern, because she could, under no circumstances, be responsible for more than a virile share, and there is no evidence to show the number of heirs. (7) The court erred in rendering any judgment against Mrs. H. Kern as heir or legal representative of Emile Kern, because no jury was impaneled to render a verdict, nor did she appear in said cause, nor was there any waiver of any jury. (8) The court erred in rendering any judgment in the cause, either against the said Mrs. Kern or against the firm of H. Kern & Son, by reason of the failure to make the succession of said Emile Kern, or the legal representatives of said Emile Kern, parties; and, by reason of the failure of the plaintiff to procure a waiver of a jury, in consequence thereof the entire judgment is a nullity."

W. W. Howe, S. S. Prentiss, W. S. Benedict, John D. Rouse, and William Grant, for Shwartz & Sons.

Percy Roberts and Bernard Titche, for Kern & Son.

H. L. Lazarus, I. D. Moore, and J. N. Luce, for H. B. Claflin Co.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge (after stating the facts). Although the record is so voluminous and, according to the brief and arguments

submitted, it is bristling with points of law, novel and otherwise, we find it necessary to consider two questions only.

1. Henry Kern and Mrs. Henry Kern complain of a judgment against them as the legal heirs and representatives of Emile Kern, condemning them in solido to pay the claim of Claflin & Co. against Henry Kern & Son, when, as the record shows, they have had no day in court, no default entered against them, nor the verdict of any jury holding them liable. It appears they were brought into the case after hearing and submission upon an assertion that they were the sole heirs of Emile Kern, deceased, and by notice only that they were made parties to the cause, and that any judgment rendered in the case should be rendered for or against them as heirs representing Emile Kern. Article 120 of the Code of Practice of Louisiana contains provisions as follows:

"If one against whom there was a cause of action die leaving one heir only, the suit shall be carried on against such heir as it would have been against the deceased. If the suit had already been brought against the deceased and he had not answered, it shall not be interrupted, but it shall be continued against the heir by a mere citation or notice served on him to that effect within the delay for original citations according as the distance may be from his domicile to the court where the action has been brought. If, on the contrary, the deceased have two or more heirs the plaintiff may proceed personally against each of them for the share which he inherits, if that share be sufficiently known and ascertained by an inventory or partition, otherwise they can only be sued each for a virile portion, that is to say for an equal part of the debt dividing it in as many parts as there are heirs. If the suit had already been commenced against the deceased it shall be continued against his several heirs by citing each of them separately as if there were only one; but judgment can only be given personally against each for his hereditary share or virile portion, as above provided."

In the case in hand, the last provision quoted applies. Under that provision it was necessary to have cited each of the heirs of Emile Kern to answer the demand against them as heirs and legal representatives of Emile Kern, giving them, and each of them, an opportunity to admit or deny heirship, or to make any other defense personal to Emile Kern, deceased, or to themselves, which the case might warrant. This appears perfectly clear, as the law of Louisiana is well settled that the heirs are not liable for the debts of their ancestor unless they shall accept his succession. It is also clear, from the provisions referred to, and other articles of the Louisiana Code of Practice, as well as the Civil Code of Louisiana, that judgment can only be given against heirs when found liable for the debts of their ancestors for their virile portions. See Code Pr. La. art. 113; Civ. Code, arts. 1426, 1427. The judgment complained of is erroneous, both because the parties condemned did not have their day in court, and because they were condemned beyond the limits allowed by law, if liable at all.

2. The case shows that after the attachment sued out in this case against Henry Kern & Son, and before final trial and judgment, the said Henry Kern & Son made a voluntary cession of their property to their creditors under the insolvency laws of Louisiana, that this voluntary cession prior to final trial and judgment was brought to the attention of the court by suitable pleadings

both by A. Shwartz & Sons, interveners, and by Henry Kern & Son, defendants, and thus the question is fairly presented on the record as to the proper disposition of the attachment issued in the case. Authority to issue attachments in common-law causes in the circuit courts of the United States is found in section 915 of the Revised Statutes, which reads as follows:

"In common law causes in the circuit and district courts the plaintiff shall be entitled to similar remedies, by attachment or other process, against the property of the defendant, which are now provided by the laws of the state in which such court is held for the courts thereof; and such circuit or district courts may, from time to time, by general rules, adopt such state laws as may be in force in the states where they are held in relation to atachments and other process; provided, that similar preliminary affidavits or proofs, and similar security, as required by such state laws, shall be first furnished by the party seeking such attachment or other remedy."

Were this section standing alone on the subject, a very strong argument could be made that, wherever attachments in the state courts of Louisiana are affected after issuance by matters arising under other laws of the state, the circuit courts would be bound to give the same effect to such matters as would be given them in the courts of the state in similar cases, and therefore that, where an attachment would be stayed or dissolved by a subsequent cession under the insolvent laws prior to final judgment in the state courts, the same effect would necessarily follow in the circuit courts of the United States. To make the matter clear, however, that such effect is to be given, the act entitled "An act to make attachments which are made under process issuing from the courts of the United States conform to the laws regulating such attachments in the courts of the states," approved March 14, 1848. (9 Stat. 214, and now substantially embodied in section 933 of the Revised Statutes), was enacted. That statute is as follows:

"That whenever, upon process instituted in any of the courts of the United States, property shall hereafter be attached to satisfy such judgment as may be recovered by the plaintiff in such process, and any contingency occurs by which, according to the laws of a state, such attachment would be dissolved upon like process pending in, or returnable to, the state courts, then such attachment or attachments made upon process issuing from, or pending in, the courts of the United States within such state shall be dissolved, the intent and meaning of this act being to place such attachments in the courts of the states and the United States upon the same footing: provided, that nothing herein contained shall interfere with any existing or future law giving priority in payments of debts to the United States."

From this it is perfectly clear that attachments sued out of the circuit courts of the United States are placed upon the same footing with regard to all incidents thereto as like cases in the courts of the state. It is well settled in Louisiana that attachments issued in civil cases give rise to no lien prior to final judgment, and the law of Louisiana is that, when there is a cession to creditors under the insolvency laws of the state, the court accepting the cession shall order all proceedings, as well against the person as against the property of the debtor, to be stayed, and that, after such cession and acceptance, all of the property of the insolvent

debtor mentioned in the schedule shall be fully vested in the creditors (see sections 1790, 1791, Rev. St. La.); and, further, that all suits which may have been brought anterior to the failure shall be transferred to the court in which the insolvent debtor shall have presented his schedule, and shall be continued against his syndic. See Id. § 1816. The uniform construction of these laws in the courts of the state of Louisiana is to the effect that all attachments issued against the property of a debtor who thereafter makes a cession of his property under the insolvent laws are by operation of law perpetually stayed. See 1 Hen. La. Dig. "Insolvency," pt. 4, pp. 686–688, and cases there cited.

The question involved here was presented to the circuit court of the United States for the eastern district of Louisiana in the case of Lafollye v. Carriere, 24 Fed. 346. It was there held—the circuit and district judges concurring—that the effect of the cession and proceedings thereon under the insolvent laws of Louisiana was to stay and practically dissolve all attachments then issued against the surrendering debtor, and against all property surrendered in the state court by the direct operation of the state laws, and in the national courts by the force of section 933, Rev. St. The same question was presented to the supreme court in the case of Tua v. Carriere, 117 U. S. 201, 6 Sup. Ct. 565, and that court said, through Mr. Justice Woods:

"It is not disputed that if the insolvent law of Louisiana was a valid law, and the surrender made by the surviving partners of the dissolved firm of A. Carriere & Sons was a valid surrender of the effects of the firm, the attachment of the plaintiff was rightfully dissolved. For, under the law of Louisiana, the effect of a cession of property by an insolvent person is to dissolve all attachments which have not matured into judgments. Code Pr. art. 724; Hanna v. His Creditors, 12 Mart. (La.) 32; Fisher v. Vose, 3 Rob. (La.) 457; Collins v. Duffy, 7 La. Ann. 39. And, by section 933 of the Revised Statutes of the United States, an attachment of property upon process instituted in any court of the United States is dissolved when any contingency occurs by which, according to the law of the state where the court is held, such attachment would be dissolved upon the process instituted in the courts of said state."

The opinions in these well considered and adjudicated cases in the circuit and supreme courts of the United States, which would ordinarily settle the matter, are attacked with much plausibility by the defendants in error (Tua v. Carriere, as obiter) urging that, as a matter of fact and law, attachments sued out of the courts of Louisiana, and not merged in final judgments, are not dissolved by operation of law, but merely stayed in the courts of the state when the debtor makes a voluntary cession under the insolvent laws of Louisiana, and the proper proceedings are had and the proper orders are made in the court accepting the cession. This contention was presented to the learned judge of the circuit court, who disposed of it, in his opinion on the motions for a new trial and for dissolving the attachment (which opinion was made by reference to part of the "Opinion, Findings of Fact, and Conclusions of Law" found in the transcript), as follows:

"But it is urged on the part of the plaintiff, there is no provision of the Louisiana law which dissolves the attachment and destroys the lien; that the

obstacle to the attachment in the state court is that the suit of the attaching creditor is stayed, and he has an attachment, but he is simply prevented from enforcing it, and that there is no such obstacle in the United States courts, by reason of their being established under a distinct sovereignty, and that here the creditor, having no such impediment, can proceed and make his inchoate or conditional lien or privilege absolute. The answer to this is the statute. By its declared intent, the creditor with an attachment in the United States court must be put on the same footing with the creditor with an attachment in the courts of the state. In these last the creditor's attachment is perpetually stayed. It follows that somehow in the courts of the United States it must be also rendered inoperative, and, since the creditor here may proceed to judgment in order to prevent the inequality which the object of the statute was to prevent, he must proceed here with the attachment dissolved. In other words, it is only by dissolving the attachment in this court that the equality of rights of the creditors can be preserved."

With these views we entirely concur.

Defendants in error further contend that neither the interveners, Shwartz & Sons, nor the defendants, Henry Kern & Son, have any interest or right to suggest or plead the insolvency proceedings, and that no syndic representing the creditors of Henry Kern & Son (which syndic, it is said, is the real party in interest) has appeared in the case. This contention was sustained in the lower courts so far as the defendants, H. Kern & Son, were concerned, but rejected as to the interveners, "because the said interveners were parties to the cause, and have an interest in the dissolution of the attachment sufficient to make them parties to the litigation of this question." It seems clear that if the rights of the interveners are favorably affected or determined by any fact outside of the record, they must have a clear right to plead such fact. As to H. Kern & Son, defendants in the court below, the reason given why they should not be allowed to plead a fact which would defeat an attachment run against them is that, by reason of their insolvency in the state court, they are civilly dead. As the plaintiffs in the court below are demanding a judgment against H. Kern & Son, and this notwithstanding the well-known insolvency proceedings of the state court, we think they are not in a position to maintain, nor can we agree, that Henry Kern & Son are civiliter mortuis. Aside from all this, it is to be noticed that the insolvency proceedings in the state court were called to the attention of the court by the intervention of the provisional syndic, and that, although the said provisional syndic has since disappeared from the case, he has left of record in the cause, beyond dispute, the fact that, prior to the final trial and judgment in the court below, Henry Kern & Son did make a cession under the insolvency laws of Louisiana which was accepted in the proper court of the state. The first conclusion of law found by the circuit court is that the attachment was dissolved by the insolvency proceedings in which the defendants made, and the proper court accepted, a surrender of all their property. It is apparent that the omission to carry this conclusion into the judgment so as to make it effective was inadvertent, and should be corrected in the judgment given in this court. The attachment dissolved, the court has neither interest

nor jurisdiction to inquire into the ownership of the property attached, and the intervention of Shwartz & Sons naturally falls.

The judgment of the circuit court should be reversed, with costs to be adjudged against the H. B. Claflin Company, and the cause remanded, with instructions to dissolve the attachment against H. Kern & Son at their costs, and as of date December 6, 1892, and to dismiss the intervention of A. Shwartz & Sons at their costs, but without prejudice to any right the defendants, H. Kern & Son, or the syndic of the creditors of H. Kern & Son, insolvents, may have in or to or arising out of the forthcoming bond given by interveners in the case; and to otherwise proceed in the cause as law and justice may seem to require, but not inconsistent with the views expressed in this opinion, and it is so ordered.