### In re SCHOLTZ et al.

(District Court, S. D. Iowa, C. D.    March 4, 1901.)

1. BANKRUPTCY LAW—SUSPENSION OF STATE INSOLVENT LAWS.
   State insolvent laws were not suspended by the enactment of the present national bankruptcy law.

2. SAME—PROCEEDINGS UNDER ASSIGNMENT LAW—PROTEST BY CREDITORS—EFFECT.
   A protest by creditors pending a determination on their petition for an adjudication of bankruptcy against their debtor, made in a state court, against further proceedings under an assignment for creditors executed by their debtor before their petition was filed, does not have the effect of a writ of injunction from the federal court against such proceedings.

3. SAME—ASSIGNEE'S RIGHT TO COMPENSATION.
   Where, pending an adjudication of bankruptcy on a petition by creditors of an insolvent, an assignee of the latter for the benefit of creditors under a state insolvent law made a beneficial sale of the insolvent's estate, he is entitled to retain from the proceeds, as against the trustee, a reasonable sum allowed by the state court for the services of himself and his attorneys.

Dudley & Coffin, for creditors.
Berryhill & Henry, opposed.

McPHERSON, District Judge. May 9, 1899, said parties made a general assignment for the benefit of creditors under the Iowa laws for such assignments for the benefit of creditors of insolvent debtors. The district court of Polk county, Iowa, took jurisdiction of the proceedings. N. C. Towne was the assignee. He employed counsel for advice and assistance. June 9, 1899, alleged creditors filed in this court a petition asking that Scholtz & Scholtz be adjudged bankrupts in proceedings in involuntary bankruptcy. Said creditors then appeared in the state court presided over by Judge Bishop, and protested against the state court taking further proceedings in the assignment case. Judge Bishop disregarded the protest, and directed the assignee to go on with his trust. The assignee converted the assets into cash. The assets consisted of goods connected with a tailoring establishment, and, no doubt, if not sold, would, by reason of going out of date, rapidly depreciate in value. It is conceded that the assignee and his attorneys acted in good faith, with diligence and skill, and that the goods were sold for the highest sum that by

any one could have been obtained. The state court allowed the assignee $100 for his services, and the attorneys $93 for their services. In November, 1899, this court adjudged Scholtz & Scholtz bankrupts. A trustee was appointed. He demanded from the assignee the goods of the bankrupts. The goods having been sold, the assignee tendered him the money arising from the sale of the goods, and the trustee accepted the same. But the assignee retained the $193 for the services of himself and attorneys. The referee held that the assignment proceedings were void, and that the assignee must also account for the $193. I am now asked to review the decision of the referee.

It will be observed that the state court had taken jurisdiction a month before proceedings were entered in this court, and six months before the adjudication of bankruptcy. That the assignee was an officer of the state court, and sales of goods by him judicial sales, are propositions affirmed by the Iowa supreme court. And, generally speaking, the court, state or federal, that first takes possession of property, will retain possession to the exclusion of the other courts. And an officer of another court who would undertake to interfere with such possession would be guilty of contempt of the court having such possession. No officer of this court sought to interfere, and this court was never asked to interfere. But the creditors now ask for the $193, not that it was not earned by the assignee and his attorneys, but because, as is contended, the state insolvent laws of Iowa are suspended and wholly without force by reason of the adoption and existence of the national bankrupt law. This position is urged because the constitution empowers congress to enact a bankrupt law, and because in July, 1898, congress exercised such power, which law is still in force. And it is urged that such action by congress is to the exclusion of the exercise of any power over an insolvent debtor's estate by a state legislature or by a state court. The supreme courts of Illinois, Massachusetts, Louisiana, and perhaps other states, sustain this contention. The supreme courts of Iowa and of other states hold against such contention. On which side of the question is the weight of authority, is difficult to determine, as will be seen from an examination of the cases cited in the text-books. Not because it is binding upon this court, but because of the reasons assigned and the arguments made, I prefer to follow the decisions of the supreme court of Iowa and the other states holding that the state insolvent laws are not suspended by the enactment of a bankrupt law. And why should I not so hold? Judge Bishop, in the state court, no doubt, felt it to be his duty, and perhaps compelled, to hold in conformity with the holdings of the Iowa supreme court. And it seems to me that all conflicts in the same case between the state courts and the federal courts should be avoided when possible. Therefore it occurs to me that the only question is, has the circuit court of appeals for this circuit or the United States supreme court otherwise decided? The case of Davis v. Bohle, 34 C. C. A. 372, 92 Fed. 325 (circuit court of appeals of this circuit), was relied on by the referee, and is now urged by the creditors. That case presented the following facts for consideration: The debtor made a general as-

signment for the benefit of his creditors under the laws of Missouri. An assignee was appointed, who took charge of the assets and advertised the property for sale. Before the day of sale, certain creditors filed a petition in the United States district court, asking to have the debtor declared a bankrupt, and at a later day asked the United States court to enjoin the assignee from selling the property and from proceeding with the assignment proceedings. The injunction was granted by the United States district court, and the order granting the injunction was affirmed by the circuit court of appeals. There was no other question in the case, and nothing else was decided. To restate the question, the court of appeals held, as appears from the opinion of Judge Thayer, that the assignment was an act of bankruptcy; that the assignee held by title which could be avoided; that, when the debtor should be adjudicated a bankrupt, the title to his property and the right of possession thereof would vest in the trustee appointed by the bankrupt court, and until such adjudication of bankruptcy and the appointment of a trustee the assignee should be enjoined by a writ from the United States court. That case was not at all like the one at bar. In the case at bar the creditors contented themselves with going over to Judge Bishop's court and protesting. And now they ask that the protest in the state court shall have the same effect as a writ of injunction from this court. Why should a protest in the state court serve the office of an injunction from this court? The state court knew that Scholtz had, in making an assignment, committed an act of bankruptcy. But the state court did not, nor did any one, know that Scholtz would be adjudicated a bankrupt. There would or might be issues of fact to try in this court before the adjudication would be ordered. While the proceedings were pending in this court, but before the adjudication, the creditor had the right to procure from this court an order to take charge of and hold the property, provided such creditors would give a good and sufficient bond conditioned to pay all damages. But, while asking for all the rights and benefits accruing under the bankrupt law, the creditors insist they can have the same without giving bonds or incurring liability. Tua v. Carriere, 117 U. S. 201, 6 Sup. Ct. 565, 29 L. Ed. 855, is cited as an authority. That there is language in the opinion to support the contention of the creditors is plain. But, whatever may have been said in the opinion, the point now made was not decided,—that the proceedings under the assignment were void. But suppose I am in error as to all the foregoing? Without a state assignment law, a debtor would have the right to place his property in the hands of a trustee to sell and apply the proceeds. This is what Scholtz did. And the transfer would be with the implied, if not express, agreement that the trustee should be paid a reasonable sum. And some of the cases cited by the creditors hold that, even if the assignment was void, the assignee should be paid, if his acts were of benefit to the creditors. As to this the facts are not very plain. But counsel, in argument before me, did not seriously challenge the amounts charged by either the assignee or his attorneys. If the goods had not been sold promptly, what would have

been the result? Rent and insurance to pay. Possible thefts. Possible damage by moths. The goods would soon have been out of date and style, and a consequent depreciation in value. So that when the assignee promptly sold the goods for full value, with the aid and advice of attorneys, he did that which was for the benefit of the creditors. And, the amount in controversy being so small, I do not feel justified in making another reference. Should the assignee's compensation of $100. and that of his attorneys of $93, fixed by the state court, be cut down, the reduction, in all probability, would be more than balanced by the expenses of the reference. If the assignee had not done just what he did, and had the bankruptcy adjudication not taken place, then the assignee would, no doubt, have been held liable for failing to perform his duty. Having performed his duty, he and his attorneys should be paid the sums fixed by the state courts, which sums are not now claimed to be too great.