PIERRE B. KENNEDY, Trustee, etc., Appellant, v. PIERCE'S LOAN COMPANY, Respondent.

St. Louis Court of Appeals, March 17, 1903.

1. **Bankrupt: INVOLUNTARY PETITION: TRANSFER OF TITLE: TRUSTEE.** The bankrupt law of 1898, provides that the trustee of the estate of a bankrupt shall be vested by operation of law with the bankrupt's title, as of the date he is adjudged a bankrupt, but only to the title of "property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon, or sold under judicial process against him."

2. ———: ———: **PROPERTY PLEDGE: LOANS MADE IN GOOD FAITH: SECURE FOR TRUSTEE.** A bankrupt after the filing of an involuntary petition and before being adjudged a bankrupt, may pledge personal property to a third party for loans, provided such third party makes such loans in good faith and without notice of the bankruptcy, and the property so pledged can not be recovered by the trustee.

3. ———: ———: PROPERTY HOW PROTECTED: RECEIVER. The property of an involuntary bankrupt, notwithstanding any neglect on the part of the bankrupt as to such property, may by the court be taken possession of and protected through a receiver.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher*, Judge.

AFFIRMED.

*Abbott & Edwards* for appellant.

(1) The filing of the involuntary petition was notice to all the world. Miller v. Nugent, 184 U. S. 1; Bank v. Sherman, 101 U. S. 403. (2) The filing of the involuntary petition was in effect an attachment and injunction. Miller v. Nugent, 184 U. S. 1; In re Krinsky Bros., 7 Am. B. R. 535; In re Gutman & Wenk, 8 Am. B. R. 252.

*Kinealy & Kinealy* for respondent.

There being no question of fraud, and the respondent having acquired its lien innocently, for value and without notice of any kind, prior to the adjudication in bankruptcy of the pledgor, the appellant was not entitled to recover possession of the pledged property without discharging the debt to secure which the property was pledged. Bankruptcy Act of 1898, secs. 67d and 70a; Brandenburg on Bankruptcy, p. 688, sec. 1; Collier on Bankruptcy, pp. 455, 456; In re Corbit, 104 Fed. 872; In re Scholtz, 106 Fed. 834; In re Wells, 114 Fed. 222.

REYBURN, J.—This is an action of replevin submitted to the court below upon the pleadings and agreed statement of facts which reveal the following situation:

On October 4, 1901, an involuntary petition in bankruptcy was filed against Morris Ellman by his creditors, and November 21st following he was duly adjudicated bankrupt in the district court of the United States in and for the eastern division of the Eastern Judicial District of Missouri, and plaintiff was duly elected and

qualified as trustee of his estate. On October 16, 1901, the bankrupt pledged with defendant, a corporation created under the laws of Missouri and in business in the city of St. Louis, as a duly licensed pawnbroker, certain chattels consisting of the jewelry mentioned to secure a loan of $300 due in thirty days, and on the 18th day of October, 1901, again pledged with the defendant as such pawnbroker, certain other jewelry described, to secure the further advance of $300 due in thirty days, said Ellman receiving from defendant the sum of $300 at each time on such pledges. The period of redemption of the articles thus pawned by the bankrupt on October 16, 1901, expired February 15, 1902, and the period of redemption for those articles pawned October 18, 1901, expired February 17, 1902. At the expiration of the redemption periods, defendant immediately transferred all the articles from a safe in its office in which it kept only property pawned with it, to a safe in which it kept only its own absolute property. Ellman at the times of pawning the jewelry with defendants was a stranger, not known to the officers or agents of the defendant, and neither defendant nor any of its officers or agents had any knowledge or information, that a petition in bankruptcy had been filed against Ellman at any time, or by any person, nor did they or any of them have any knowledge or information respecting the financial condition of Ellman. All the property pledged belonged to and was in the possession of Ellman prior to October 4, 1901, and thereafter continued in his possession until pawned by him with defendant, and its total value was $650.

Upon submission of the case upon the agreed facts, plaintiff asked the court to give a series of declarations of law, embodying the proposition that the filing of the petition of bankruptcy against Ellman conveyed constructive notice of such proceeding to defendant, and that thereafter defendant in its dealings with Ellman was bound to take notice of the filing of such petition,

which was in effect an attachment and injunction, and that under the facts, defendants acquired no title to the property involved, which the court refused, and at the instance of defendant gave an instruction that under the law on the agreed statement of facts, the finding and judgment must be in favor of defendant, and the court sitting as a jury so found and rendered judgment in favor of defendant.

It is argued on behalf of plaintiff that after the filing of the involuntary petition in bankruptcy, Morris Ellman had no title to the personal property which he had pledged for personal loans with defendant, but that a bankrupt's estate, assets and liabilities, alike, stand as of the date of the filing of the petition, and from that time the prospective bankrupt becomes, at most, a mere trustee for his creditors and powerless to dispose of his property in any manner.

The filing of the bankruptcy proceeding, it is contended, was constructive notice to all the world of its pendency, and thereafter all persons engaging in any transactions with Ellman, dealt with him at their own peril, and charged with notice of the possible adjudication of his insolvency and its consequences. In support, appellant quotes the language of the chief justice of the United States Supreme Court from the opinion in Mueller v. Nugent, 184 U. S. 14: "It is as true of the present law as it was of that of 1867, that the filing of the petition is a caveat to all the world and in effect an attachment and injunction." This language itself is borrowed from Bank v. Sherman, 101 U. S. 406, which arose under the Bankrupt Act of 1867. Misguided by the above expressions injected into the Mueller case, the United States District Court of the Southern District of New York has, we apprehend, wandered and lent a degree of misjudged vigor to appellant's position in the cases of In re Gutman & Wenk, 8 American Bankruptcy Reports 252, and In re Krinsky Brothers, 7 American Bankruptcy Reports 535. The bankrupt

law of 1898 provides that the trustee of the estate of a bankrupt shall be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, excluding property exempt, but expressly to the title of (5) "property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon or sold under judicial process against him." Sec. 70 of Act of 1898. This latter clause limits and determines the class of property passing to the trustee, but as to this he is vested with the title as of the date of adjudication. Brandenburg, Bankruptcy, p. 691; Collier, Bankruptcy, p. 456. Under the Act of 1867, as forcibly presented in Bank v. Sherman, supra, the filing of a petition in bankruptcy was a caveat to all the world, in effect an attachment and injunction, and thereafter all property rights of the debtor were *ipso facto* in abeyance until the final adjudication which, if in his favor, revived such rights, but if adverse, were divested out of him and transferred to his assignee in trust for his creditors. The trustee's title under the present act, manifestly and expressly does not relate back beyond the time of the decree, but irrespective of the time of his election and qualification, his title attaches and becomes vested, as of the date of the adjudication. Under the provisions of the present law, in sharp contrast to the operation of the former law, no interregnum between the filing of the petition and the adjudication is occasioned during which, under the earlier law, the bankrupt was *civiliter mortuus,* his property rights suspended awaiting the final adjudication, so that any person dealing with him during such interval dealt at his own peril. The inconvenience and even hardship produced by such intermission created or made possible by the Act of 1867, during which the public in good faith and for the full value, might acquire title to the bankrupt's property, subsequently avoided and divested by the bankrupt's adjudication,

was recognized as an infirmity and an evil to be avoided or remedied by the judiciary committee of the House of Representatives, in reporting the bill which matured into the present national bankruptcy statute; and the express change in this direction in the law now in force was deliberately designed and intended to afford relief and obviate the pernicious effect of the former bill in such regard, by providing that the title of the bankrupt's estate should be transplanted to the trustee on the date of the adjudication, thus permitting the alleged bankrupt, pending the adjudication, to handle and dispose of his property without restriction, except the limits of good faith, and without exposing the innocent purchaser for value to the danger of being deprived of his property after its acquisition by the ensuing adjudication. The committee also comprehended that in section 69, abundant provision was made for the protection of the property of an involuntary bankrupt if neglected by him and exposed to deterioration in value, by authorizing the bankruptcy court to summarily place it in the marshal's possession, and it may also be suggested, that if such remedy proved inadequate, the safety of the bankrupt's estate is further guarded and assured under the plenary power in the court conferred by paragraph 3, section 2, chapter 2 of the present act for appointment of a receiver for its preservation after the filing of the petition and pending the election and qualification of a trustee. Brandenburg, Bankruptcy, p. 688; Collier, Bankruptcy, p. 455; In re Scholtz, 106 Fed. 834; In re Corbett, 104 Fed. 872; In re Wells, 114 Fed. 222.

The position herein assumed by us is fortified by other provisions of the present act, especially section 67d, which declares that liens given or accepted in good faith for a present consideration, and not in contemplation or in fraud of the bankrupt law shall not be affected thereby. In Mueller v. Nugent, supra, Nugent, as the agent of the bankrupt had possession of the

funds of the bankrupt's estate, the proceeds of property mortgaged and sold as agent of the bankrupt, and did not assert any claim adverse to the bankrupt, and the sole question before the court was the validity of the summary contempt and imprisonment proceeding, by which the trustee sought to recover the money from the agent, and upon a fair and careful reading of the case, the conclusion is irresistible that the portion of the opinion upon which appellant depends was a mere expression of the writer, outside of the case, and in truth and in fact, in the words of the same opinion, quoted from 181 U. S. 188, "was an inadvertence, and upon a question not arising in the case before the court," which related exclusively to the jurisdiction of the referee in the summary remedy invoked by the trustee. This case was the subject of review in the recent proceeding in In re Wells, in the United States District Court of the Western District of Missouri (114 Fed. Rep. p. 222), and that court declined to give it the interpretation or recognize it as authority to the extent contended for by appellant. It will be remembered that no element of fraud is presented in this record, and respondent confessedly made the loans in good faith according to the usual course of business, and acquired the liens upon and possession of the personalty innocently, for adequate consideration, and without notice or knowledge of the pendency of the bankruptcy proceeding against the pledgor. With the highest respect for the exalted tribunal and its distinguished presiding member, through whom the decision in Mueller v. Nugent was announced, we can not yield to the *obiter dictum* relied on, nor recognize as controlling authority an inadvertency evidently erroneous and in misapprehension of the manifest language of the existing bankruptcy law. "*Aliquando bonus dormitat Homerus.*" The judgment will therefore be affirmed. *Bland, P. J.,* and *Goode, J.,* concur.