In re BOARD OF DIRECTORS OF SUBURBAN CONST. CO.

(Supreme Court, Special Term, Kings County.  August, 1913.)

1. BANKRUPTCY (§ 20*) — STATE COURT RECEIVER — ACCOUNT — ALLOWANCE — FEES.

Where a receiver of an insolvent corporation is appointed by a state court in voluntary dissolution proceedings, and within four months the corporation is adjudged a bankrupt, the state court has jurisdiction to allow the receiver's account and fix the compensation for his own services, and for those of his attorney, prior to ordering payment of the assets to the trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 23; Dec. Dig. § 20.*]

2. BANKRUPTCY (§ 20*)—INSOLVENT CORPORATION—RECEIVERSHIP IN STATE COURT—ALLOWANCES—ATTORNEYS PROCURING RECEIVER.

Where a receiver of an insolvent corporation was appointed by a state court and within four months the corporation was adjudged a bankrupt, the attorneys who procured the appointment of the receiver were not entitled to an allowance for their services from the state court on the settlement of the receiver's account prior to turning over the assets to the bankrupt's trustee, but were only entitled to prove their claim, as unpreferred, in the bankruptcy court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 23; Dec. Dig. § 20.*]

Petition of a majority of the Board of Directors of the Suburban Construction Company for a voluntary dissolution thereof.  On motion to pass a receiver's account and to fix allowances of the receiver and his counsel.  Granted.

Arnon L. Squiers, of New York City, for receiver.

Latson, Tamblyn & Pickard, of New York City, for petitioners.

Robert P. Levis, of New York City, for Rosenberg & Levis.

BENEDICT, J.  [1] This is an application to fix the compensation of a temporary receiver of a corporation in proceedings for the voluntary dissolution thereof, and also to fix the compensation of the receiver's attorney and of the attorneys who procured his appointment.  The corporation has been adjudged a bankrupt in proceedings commenced within four months after the appointment of the receiver by this court, and it was stated on the argument that a trustee in bankruptcy had been appointed, although that fact is not disclosed by the motion papers.

Upon the authority of Randolph v. Scruggs, 190 U. S. 533, 538, 539, 23 Sup. Ct. 710, 47 L. Ed. 1165, I think the receiver is entitled to an allowance for services rendered and for disbursements and expenses made or incurred by him which have been of benefit to the bankrupt estate—that is, which have been of value in conserving the property of the bankrupt, increasing its amount or income—whether rendered before or after the filing of the petition in bankruptcy.  See, also, In re Weedman Stave Co. (D. C.) 29 Am. Bankr. Rep. 460, 465, 199 Fed. 948.

The question is presented, however, whether such allowance can

be made by the state court which appointed the receiver—that is, by this court—or whether it must be made by the bankruptcy court. Randolph v. Scruggs, supra, does not determine this question, and I have not been referred to, nor have I been able to find, any case in the federal Supreme Court which does determine it directly. In Matter of Watts, 190 U. S. 1, 35, 23 Sup. Ct. 718, 727 (47 L. Ed. 933), however, the Supreme Court, by way of dictum, said:

"It has been already assumed that the bankruptcy proceedings operated to suspend the further administration of the insolvent's estate in the state court, but it remained for the state court to transfer the assets, settle the accounts of its receiver, and close its connection with the matter."

This apparently recognizes the right of the state court to fix the allowances of its receiver for compensation and expenses. And so it was interpreted in Loveless v. Southern Grocer Co. Ltd., 20 Am. Bankr. Rep. 180, 159 Fed. 415, 86 C. C. A. 395 (U. S. C. C. A., 5th Cir.), where a state receiver, prior to the filing of the petition in bankruptcy, had paid out of the assets in his hands various sums for court costs, keeper's fees, taxes, attorney's fees, and receiver's commissions. The Circuit Court of Appeals reversed an order of the District Court requiring the state receiver (who was also the trustee in bankruptcy) at once to pay into the registry of the bankruptcy court all moneys which had come into his hands as receiver of the state court, thus leaving it to the state court to go ahead and settle his account in proceedings therefor which were then pending. This clearly involved the recognition of the right of the state court to pass upon the propriety of the expenditures above indicated.

The right of the state courts to fix the allowances to their receivers or other officers of a similar nature is also supported by other authorities. Mauran v. Crown Carpet Lining Co., 6 Am. Bankr. Rep. 734, 740–743, 23 R. I. 324, 344, 50 Atl. 331, 387; Wilson v. Parr, 8 Am. Bankr. Rep. 230, 115 Ga. 629, 42 S. E. 5; In re Scholtz (D. C.) 106 Fed. 834. Contra: In re Standard Fuller's Earth Co. (D. C.) 186 Fed. 578. The reason of the rule is well stated in the first of these cases as follows:

"A receiver is an officer of the court, holding property under its order for the benefit of the party entitled to it. All courts therefore hold that the receiver should be paid from the fund, as a part of the expense of the proceeding. It would greatly embarrass courts in securing good receivers if this rule should not be adhered to. They should not be subjected to the uncertainty, inconvenience, and delay of awaiting other proceedings and of seeking their pay from other courts.

"It follows from this general rule that the fund or estate in the hands of a receiver, with reference to a party entitled to it, is the surplus over the charges allowed to the receiver. If so, we see no reason why the fund or estate for which a receiver is accountable to a trustee in bankruptcy is not the same surplus. If the fund had been adjudged to the bankrupt, that is all he could have received. Why should the trustee receive more? By the terms of the bankrupt law the trustee is vested only 'with the title of the bankrupt, as of the date he was adjudicated a bankrupt.' In the case before us the receiver's charges had been incurred before that time. It is true that the court had not, before that time, passed upon or allowed the receiver's charges; but that is a matter incidental to the administration of the estate. It is a step towards ascertaining the amount of the estate to be turned over. It can be done after the adjudication in bankruptcy as well as before.

"In Eyster v. Gaff, 91 U. S. 525 [23 L. Ed. 403], Mr. Justice Miller said: 'The opinion seems to have been quite prevalent in many quarters at one time, that the moment a man is declared bankrupt, the District Court which has so adjudged draws to itself by that act not only all control of the bankrupt's property and credits, but that no one can litigate with the assignee contested rights in any other court, except in so far as the Circuit Courts have concurrent jurisdiction, and that other courts can proceed no further in suits of which they had at that time full cognizance; and it was a prevalent practice to bring any person who contested with the assignee any matter growing out of disputed rights of property, or of contracts, into the bankrupt court by the device of a rule to show cause, and to dispose of their rights in a summary way. This court has steadily set its face against this view.' "

I conclude therefore that this court has power to pass the account of the receiver and to make an allowance to him for his services up to the time of the adjudication of bankruptcy, so far as they have been beneficial to the bankrupt estate, also to make allowances to his attorneys for services beneficial to the bankrupt estate.

[2] As to the attorneys who procured the appointment of the receiver, I think they are not entitled to any allowance, which shall constitute a lien or preferential charge against the assets, but they may prove their claim as an unpreferred claim in the bankruptcy court. Randolph v. Scruggs, supra, 190 U. S. at page 539, 23 Sup. Ct. 710, 47 L. Ed. 1165.

A careful consideration of the account and report submitted by the receiver clearly indicates that his services and those of his attorneys were of great benefit to the bankrupt estate. By the exercise of prompt attention and good business judgment the property coming under the receiver's control was not only protected from waste, but was rendered productive at a critical time, and many difficult and unusual questions of conflicting rights growing out of obligations and contracts were settled and disposed of without expensive litigation. For these services I think an allowance to the receiver of $2,000 would be appropriate, together with an allowance to him of a similar amount as compensation for the services of his attorneys, of which last-mentioned sum $150 should be paid to Rosenberg & Levis and the balance to Arnon L. Squiers.