## Edwin A. Griswold vs. Jabez Pratt.

While the United States bankrupt act of 1841 was in force, proceedings against a debtor, under the insolvent law of the State, were unauthorized and void, if the debtor and his property were subject to the operation of that bankrupt act, although no proceedings under it were had against him.

This was an action of trover, brought by the assignee of Orin D. Myrick, and was submitted to the court on the following statement of facts: On the 3d of March 1842, said Myrick, being in a state of bankruptcy, and owing over $2000, applied to a master in chancery, in this county, for the benefit of the insolvent law of 1838, c. 163. On the 16th of said March, the plaintiff was appointed, in the manner prescribed by said law, assignee of the goods and estate of said Myrick. Afterwards, and before the commencement of this suit, the plaintiff demanded of the defendant the property alleged in the plaintiff's declaration to have been converted by the defendant, and the defendant refused to deliver it; alleging that the proceedings under said insolvent law were void, by reason of the operation of the United States bankrupt act of 1841, which took effect from and after the 1st of February, 1842, before any proceedings were had, in conformity with the said insolvent law, touching the premises.

The property, described in the plaintiff's declaration, had been attached by the defendant, a deputy sheriff, as the property of said Myrick, on the 25th of December 1841, by virtue of a writ in favor of J. Shepard and others; and on the 28th and 29th of said December, by virtue of other writs. All these writs were issued from the court of common pleas for this county, and were duly entered at the April term .thereof. in 1842. The defendant, as deputy sheriff, and by virtue of said writs and attachments, held said property, at the time of the aforementioned demand thereof by the plaintiff, and has since sold the same on executions, duly issued from the court of common pleas, on judgments recovered in the suits on which said attachments were made. But the said property

and the proceeds thereof were insufficient to satisfy said executions.

It was agreed that if the plaintiff was entitled to recover, a jury should assess his damages ; otherwise, that a nonsuit should be ordered.

The argument was had at the last March term.

*Goodrich,* for the plaintiff.

*Plimpton,* for the defendant.

DEWEY, J. This case presents the interesting question of the effect of the United States bankrupt law, enacted in 1841, upon the insolvent laws of the individual States, then in force. The facts here stated raise the direct question, whether the enactment of a national bankrupt law does, *ipso facto,* suspend and abrogate, during the continuance of such law, all general insolvent laws of the several States, so far as they have reference to future cases, and are applicable to the same persons, the same contracts, and the same assets, as are made subject to proceedings under the bankrupt law.

The individual through whom both parties claim title to the property now in controversy was, as is agreed, indebted in such an amount, and under such circumstances, as fully to subject his person and property to proceedings in bankruptcy, at the time of his making application to a master in chancery for the institution of proceedings against himself, under the insolvent law of this Commonwealth, (*St.* 1838, *c.* 163,) and under which proceedings the plaintiff claims, as assignee of the insolvent, to hold the property.

The general question of the validity and the effect of state insolvent laws has been very fully considered in the leading cases of *Sturges* v. *Crowninshield,* 4 Wheat. 122, and *Ogden* v. *Saunders,* 12 Wheat. 213. In default, on the part of the national government, to enact a bankrupt law, many of the States had enacted insolvent laws, of a very extended character, directly discharging all debts of the insolvent, as well those contracted previously as subsequently to the passage of those laws. These state laws were apparently coextensive, in all their purposes and effects, with a general bankrupt law.

2 *

Under this course of state legislation, cases frequently arose as to the effect of a discharge under such insolvent laws, and questions as to the validity of such laws came to be fully discussed before the supreme court of the United States. The broad ground was originally taken, that such state insolvent laws were, under all circumstances, invalid, being in violation of the provisions of the constitution of the United States authorizing congress to establish uniform laws, on the subject of bankruptcy, throughout the United States, and the further provision that no State should pass any law impairing the obligation of contracts. The result of these judicial inquiries and decisions was, as is well known, that it was held that the power, vested in congress, to enact a bankrupt law, did not supersede the right and authority of the several States to enact insolvent laws, while the power remained dormant, and was not called into exercise by any act of legislation of congress on the subject; and that the mere existence of the power in the national government to act on the subject was not an absolute restriction upon the powers of the several States to act in the matter, in the absence of any existing bankrupt law; holding, however, that the other provision of the constitution, already adverted to, that the State should pass no law impairing the obligation of contracts, would render invalid any state insolvent law, so far as it authorized the granting of a discharge from liability for debts contracted before the enactment of such state insolvent law. The great question in the cases referred to was, whether the power, vested in the national government, to establish a uniform bankrupt law, did not supersede all state legislation on the subject. The question of the effect of the actual exercise of this power by the congress of the United States was only incidentally considered; as no such act was in force, or had been, except for a very short period, and that long previous. In these discussions and judicial opinions, which were pronounced by the members of the supreme court of the United States, it seems, however, to be assumed or held as unquestioned, that if the authority, conferred by the constitution, to

establish such uniform bankrupt system, was exercised by congress, and a bankrupt law was actually in force, all state legislation on the matter would be at once superseded; certainly, as to all cases falling within the provisions of such bankrupt law. Thus, in *Sturges* v. *Crowninshield*, 4 Wheat. 196, it is said, " it is not the right to establish these uniform laws, but their actual establishment, which is inconsistent with the partial acts of the States." See also *Ogden* v. *Saunders*, 12 Wheat. 213.

This subject was somewhat considered by this court, in *Blanchard* v. *Russell*, 13 Mass. 1, where the defence relied upon was a discharge under the insolvent law of the State of New York. The plaintiff insisted that the insolvent law of New York was invalid, being repugnant to the constitution of the United States authorizing congress to establish a uniform bankrupt law. This broad proposition was not sustained, but it was said by the court, " there is no doubt that if a bankrupt law should be passed by congress, the respective acts of the several States would be superseded; because their existence would then be inconsistent with that uniformity which it was the wish of the people to establish." Again, in the recent case of *Judd* v. *Ives*, 4 Met. 401 — a case that occurred since the enactment of the bankrupt law, but where the precise question raised was more limited in its character than in the present case, being that of the effect of the bankrupt law upon cases then pending under a state insolvent law, but in which proceedings had been instituted before the bankrupt law took effect — the judge who delivered the opinion of the court stated the principle strongly, that the passage of the bankrupt law superseded the operation of the insolvent law of this Commonwealth, and cited with approbation the doctrine of Story, J. in *Eames's case*, (since reported in 2 Story R. 322,) and the opinion in *Blanchard* v. *Russell*, 13 Mass. 1. The rule was stated, in the case of *Judd* v. *Ives*, with the limitation only that the bankrupt law did not suspend the operation of the insolvent law in cases where the proceedings had been commenced previously to the existence and operation of the bankrupt law.

In *Eames's case*, already cited, the opinion of Mr. Justice Story seems to be full and direct to the point now under consideration ; holding that when congress do pass a bankrupt act, the state insolvent laws, as to future cases, can no longer operate upon persons or cases within the purview of such act, and that the Massachusetts insolvent law does act upon the same subject matter, and the same persons, as the bankrupt law. It is proper, however, to remark, that in that case proceedings had been instituted under the bankrupt law, and hence, necessarily, there had arisen a case of conflict of jurisdiction. We understand, however, the doctrine of Mr. Justice Story to be broadly asserted, and extensive enough to embrace the present case.

The only case cited by the plaintiff's counsel, as sustaining a contrary doctrine, is *Ziegenfuss's case*, 2 Iredell, 463. It was there conceded that the effect of the bankrupt law was necessarily to suspend all state laws with which it came in conflict ; but it was contended, and the principle was sanctioned by the court, that a state insolvent law may exist and operate with full vigor, until the bankrupt law attaches itself upon the person or property of the debtor, by proceedings instituted in bankruptcy ; and it was further held, that no case of conflict could arise, until after the proceedings in bankruptcy had reached that stage in which the debtor had been judicially declared a bankrupt.

This principle, that until proceedings in bankruptcy are actually instituted, the state insolvent law may be allowed to operate upon the person and property of the debtor, although at first view it may seem plausible, cannot, we think, be sustained. The right to proceed under the insolvent law of Massachusetts, the bankrupt law being in full force, must be placed upon a firmer basis than that of the failure of the insolvent to apply to the district court of the United States for the institution of proceedings in bankruptcy. If the proceedings under the insolvent law are valid at all, they must be valid to the extent of carrying out and perfecting such proceedings after they have been once instituted. Such effect has always

been admitted to attach to proceedings legally commenced before the bankrupt law went into operation, but then pend ing. Sound principle would require that, in all cases where proceedings could be legally instituted, they should have the legal capability of being perfected and closed, under the state law. But under the view taken of this question on all sides, and as conceded on the part of the plaintiff, the proceedings under the state insolvent law, by virtue of which he claims the property in controversy, might be wholly superseded and rendered void, at the will of the insolvent debtor, by filing his petition in bankruptcy, during any stage of the proceedings under the insolvent law, before his assets should be divided among his creditors.

It is to be borne in mind that the bankrupt law of 1841 was of a more extended character than the earlier bankrupt law, or the English statutes of bankruptcy. It was not confined to traders, and included cases of voluntary application to be declared a bankrupt, upon the petition of the debtor. For this reason, the difficulty of discriminating between a bankrupt law and the state insolvent laws has been increased. Indeed, except in name, and in reference to the incompetency of the latter to discharge debts contracted before their enactment, they had become similar in their purposes and effects

The policy of Massachusetts, to a late period, (1838,) was uniform ; enacting no insolvent law, but awaiting the action of the national legislature on the subject which had been so wisely made a national one. The statute of 1838 was at once suspended, by direct legislation, during the existence of the bankrupt law. For nearly half a century after the adoption of the constitution of the United States, we had no insolvent law ; and this state of things was, doubtless, in some measure, to be attributed to the strong impression here entertained, that all state insolvent laws of a general character, and providing for the discharge of debtors, were unconstitutional. Other States took a different view of this question, and enacted statutes, really of bankruptcy, though assuming the name of insolvent laws ; and at length our own legisla-

ture adopted a system of proceedings in insolvency, under which the present question. arises.

As sustaining our views upon the general question of the effect of a bankrupt law in superseding state insolvent laws, we may also refer to the opinion of this court in *Carter* v. *Sibley*, 4 Met. 298. The question there raised was, whether the *St.* of 1836, *c.* 238, which regulated the assignment and distribution of the property of insolvent debtors, was repealed by the more general insolvent law of 1838, *c.* 163. It was not in terms; but it was held that, so far as it affected the same class of persons, the latter statute superseded the former; that it could not have been within the intention of the legislature to have in existence two distinct systems, operating upon the same persons and property, and leaving it to the option of the debtor to elect one or the other at his pleasure.

Here, as in the case alluded to, the insolvent law of Massachusetts and the bankrupt law of congress affect the same persons, the same property, and the same rights. If both are in force, the debtor may elect under which he will proceed, and with the. further embarrassment to all concerned, that the proceedings under the state law will be liable, at any time, to be superseded by an application for proceedings in bankruptcy. The *St.* of 1836, *c.* 238, was held to have been repealed by *St.* 1838, *c.* 163, as to all cases embraced within the provisions of the latter; as otherwise two distinct and independent systems would be in force, operating upon the same persons and the same property. The case is much stronger where the question is, whether the national legislation, under the authority to establish a uniform bankrupt law throughout this Union, supersedes state legislation, affecting the same persons and same rights; and we can. have no doubt that, upon the enactment of a bankrupt law, such law must supersede all local law affecting the same persons and property, and having the same general objects. If this were not so, the law would be imperfect, and all the evils would be experienced of two different systems of distributing the assets of insolvent debtors, with the strongly objectionable feature, that one of those systems, the

state insolvent law, was of such a character as to be liable to have the proceedings under it superseded by proceedings being instituted under the other, at the election of the insolvent, or of his creditors, if a case existed for compulsory bankruptcy.

Considering our insolvent law to be a system introduced for the purpose of sequestering the effects of an insolvent debtor, and of discharging him from all debts contracted after the enactment of the law, we are satisfied that the two systems cannot stand together; that the provision of the constitution, authorizing congress to establish a uniform bankrupt law, does not of itself prevent the enacting of insolvent laws by the individual States; yet that when the power is exercised by congress, and a bankrupt law is in force, it does suspend all state insolvent laws applicable to like cases, and that this effect follows the enactment of such bankrupt law, and does not require the actual institution of proceedings in bankruptcy to produce such result.

The consequence is, therefore, that in the present case the proceedings before the master in chancery, under the state insolvent law, were unauthorized, and that the plaintiff, as assignee of the insolvent, has no legal claim to the property in controversy. *Plaintiff nonsuit.*