M. G. PALMER *vs.* HENRY C. HIXON.

Cumberland.   Opinion February 22, 1883.

*Insolvent law.   Constitutional law.*

The insolvent law of 1878 was a valid law when enacted, though its operation was suspended by the United States bankrupt law then existing.   When the repeal of the bankrupt law took effect the insolvent law went into operation, and took cognizance of all acts within its provisions done while it was so suspended, and applied to contracts made during that time.

ON EXCEPTIONS from superior court.

Assumpsit on three promissory notes, dated April 26, 1878. Writ was dated January 23, 1880.   Plea, discharge in insolvency. The presiding justice held that the discharge in insolvency relieved the defendant from liability on the notes in suit, and the plaintiff alleged exceptions.

*J. H. Fogg,* for the plaintiff.

The insolvent law of 1878 was in violation of Constitution of U. S. Art. 1, § 8; *Sturgis* v. *Crowninshield,* 4 Wheat. 122; *Baldwin* v. *Hall,* 1 Wall. 223.

But this court has passed upon this point.   *Damon's appeal,* 70 Maine, 153.

The case last cited fully sustains the position that the insolvent law did not go into operation till the repeal of the bankrupt law September 1, 1878.

The notes in suit were made before the insolvent law went into operation.   It was at a time when that law was not in force. The contract was made with reference to the law in force at the time.

The bankrupt law as effectually postponed the operation of our state law as though the legislature had so specially provided in the act itself.   *Damon's appeal, supra.*   And if the act had thus provided, then debts contracted prior to September 1,

1878, would not be affected by it.   *Washburn* v. *Bump*, 10
Met. 392 ; *Austin* v. *Caverly*, 10 Met. 332.

*Drummond and Drummond*, for the defendant, cited : *Atkins*
v. *Spear*, 8 Met. 491 ; *Swan* v. *Littlefield*, 4 Cush. 574 ; *Ward*
v. *Proctor*, 7 Met. 318 ; *Lothrop* v. *Highland Foundry Co.*
128 Mass. 120 ; *Rankins* v. *R. R.* 1 B. R. 647 ; *In re Bloss*,
4 B. R. 147.

DANFORTH, J.   The notes in suit in this case are dated April
26, 1878.   The defendant filed his petition in the insolvent
court November 5, 1879, and on April 6, 1881, obtained his
discharge from all debts provable under said law and which were
existing at the time of filing said petition.   These notes are so
provable and were so existing.   They, therefore, come within the
terms of the discharge, which appears to be in conformity with
the law and is therefore a good defence to the action, unless
the law is invalid in whole, or so far as it is applicable to these
notes.   That the state has the constitutional power to pass an
insolvent law, has been considered as settled since the case of
*Sturgis* v. *Crowninshield*, 4 Wh. 122, and the validity of the
act of 1878, was settled in *Damon's case*, 70 Maine, 153.   The
only qualification to this power. is found in the constitution of
the United States, giving congress power "to establish uniform
laws on the subject of bankruptcies throughout the United
States."   In the cases referred to it is held that this clause is not
prohibitory upon the states, but that the exercise by congress
of the power thus granted suspends that of the states, and that
the state law is not annulled, but its operation suspended while
the national law is in force.

Admitting this proposition, it is still urged that it is
inoperative as to these notes, as it was not in force when they
were given, and if so applied it would be void as impairing the
obligation of a contract.

The constitution of the United States provides that "no state
shall pass any law impairing the obligation of contracts."   Our
own state has in its constitution a similar provision.   It is
beyond question that a state insolvent law so far as it is made

applicable to contracts made before its passage, is in violation of this provision of the constitution, and whatever may be its terms, it cannot be so applied, though it may be valid as to subsequent contracts.

Thus the simple question presented in this case is, whether the act of 1878, was, within the meaning of the constitution, passed before April 26, 1878. If we look at the act itself the question is easily settled. From that it appears that the last legislative act necessary to make it a complete law, including the approval of the Governor, was done as early as February 21, 1878. After that time nothing was left to be done to make it a completed act, so far as the legislature is concerned, and from this time it would seem to be a passed act. It certainly was never passed afterwards, and yet it is now in full force and operation. When approved it became an existing act, a statute of the state, a part of the policy of the state, and as such entered into the contracts made in the state so far as applicable, and in the sense of the constitution as defined in *McCracken* v. *Hayward*, 2 How. 612, where it is said, "The obligation of a contract consists in its binding force on the party who makes it. This depends upon the laws in *existence* when it is made; these are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by one party, and the right acquired by the other." It would seem to follow that the insolvent act entered into and became a part of the contract in suit, and its application to such contract does not impair its obligation. In *Smith* v. *Morrison*, 22 Pick. 430, it was held that a law limiting certain actions to six years, passed November 4, 1835, to take effect May 1, 1836, was valid, notwithstanding the limitation took effect at the same time the law did. This was on the ground that the statute was passed November 4, 1835, and the time between that and May 1, following, when it went into effect, was a reasonable time in which creditors might commence their actions. The necessary inference is, that the passage of the act was sufficient to give

notice and warning to all persons interested, to be prepared for the change which would result when it should take effect.

To the same effect is *Swan* v. *Littlefield*, 4 Cush. 574, in which it was held that a discharge under the bankrupt act may be impeached by proving fraudulent acts of the bankrupt which took place between the time when the act was passed, and the time when it took effect. In the opinion, quoting from Judge STORY, it is said, "The act became a law by the very terms of the constitution of the United States, as soon as it was approved by the President, although its operation was suspended until the first of Feburary, 1842." So the insolvent act of 1878 became a law when approved, though by a general law of the state its operation was suspended for thirty days after the adjournment of the legislature, and from that time became the policy of the state and a sufficient notice to all persons interested that contracts subsequently made would be subject to its provisions.

But if under the law of the state it is thought proper to allow the thirty days after the adjournment of the legislature for those interested to obtain a knowledge of its provisions and hold that until that time has elapsed the act shall not have any effect whatever, still it would become a law on March 24, 1878, and previous to the origin of the notes in suit. But it is claimed that it was still further suspended until the repeal of the bankrupt law which took effect September 1, 1878, subsequent to the date of the notes. But it is certain that this repeal of the bankrupt law did not create the insolvent law. It in fact had no influence whatever upon its provisions. They remained the same after as before. The one was the act of one government, the other the act of another government. But the bankrupt law having the superior authority while in force must prevail; when repealed it simply removes an obstacle to the operation of the insolvent law, and that at once, without any legislative act, of its own force, goes into operation. It had sufficient validity of its own, to be operative. It was then, by its own terms a law, suspended indeed, but unless a law, nothing to suspend, nothing

to become operative when the suspension ceased. This was decided in effect in *Damon's case, supra,* in which it is said, "It is urged that the law was invalid because it did not go into complete operation after its passage. But that is not requisite to its validity. It does go into partial operation on its passage. It was a law valid in all respects and to be obeyed, except so far as it was in conflict with the statute of the United States." If, then, it was a valid law, when permitted to operate, it must operate upon all acts done under it since its passage, or certainly while suspended.

In accordance with these views we find the decisions in Massachusetts, where similar questions have arisen. In *Ward* v. *Proctor*, 7 Met. 318, it was held that an attachment made while the insolvent law was suspended was dissolved by it, when the suspension ceased. On page, 321, SHAW, C. J., says, "The insolvent law, during its suspension, existed for many purposes. It was suspended only during the existence of another system of paramount authority, designed for the accomplishment of the same purpose. . . When, therefore, the operation of this suspending law ceased, the original act was reinstated in active operation, *and took effect from its original enactment.*" *Atkins* v. *Spear*, 8 Met. 490; *Austin* v. *Caverly*, 10 Met. 332; *Washburn* v. *Bump*, *Id.* 332; *Lothrop* v. *Highland Foundry*, 128 Mass. 120, are to the same effect, all holding that an insolvent law suspended by the superior authority of a bankrupt law, when the suspension ceases, will take effect from its enactment and take cognizance of all acts within its provisions though done while it was thus suspended.

*Exceptions overruled.*

APPLETON, C. J., BARROWS, VIRGIN, PETERS and SYMONDS, JJ., concurred.