## Potts, Appellant, *v.* Smith Manufacturing Company.

*Bankruptcy—Insolvency—Constitutional law—Act of June 4, 1901, P. L. 404.*

The Pennsylvania act of June 4, 1901, relating to insolvency is suspended by reason of the existence of the federal bankrupt act of July 1, 1898, and does not become operative as to the persons and subjects to which the federal act applies.

Where the constitution of the United States leaves in the states and in congress concurrent power over a particular subject, and congress has exercised its power over such subject, the control of the states over that subject is prohibited.

Argued Oct. 20, 1903. Appeal, No. 158, Oct. T., 1903, by plaintiff, from order of C. P. Franklin Co., April T., 1903, No. 150, making absolute rule to set aside execution in case of Charles W. Potts et al. v. Smith Manufacturing Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Rule to set aside execution.

From the record it appeared that the rule was taken by the assignees for creditors of the defendant, under the act of June 4, 1901. It did not appear from the record that either the defendant or any of its creditors had applied for the benefit of the federal bankrupt act.

*Error assigned* was order making the rule absolute.

*Charles Walter* and *O. C. Bowers*, for appellant.—All the following cases, some decided under the earlier bankrupt acts, and others under the act of 1898, hold that state insolvent laws are suspended ipso facto by the passage of a national bankruptcy law: Larrabee v. Talbott, 5 Gill (Md.), 426; Van Nostrand v. Carr, 30 Md. 128; Rowe v. Page, 54 N. H. 190; Chamberlain v. Perkins, 51 N. H. 336; Martin v. Berry, 37 Cal. 208; Dodd v. Middleton, 63 Ga. 635; Orr v. Lisso, 33 La. Ann. 476; Palmer v. Hixon, 74 Me. 447; Matter of Reynolds, 8 R. I. 485; Ex parte Eames., 2 Story (U. S.), 322.

*W. K. Sharpe*, of *Sharpe & Elder*, with him *W. T. Omwake*, for appellee.—In our view, the weight of authority under the

law of 1867 is in support of the exercise of jurisdiction under the state laws, certainly until the jurisdiction of the federal courts has been called into exercise; and therefore, that the national bankrupt law does not wholly suspend the state laws: Musser v. Brindle, 23 Pa. Superior Ct. 37.

OPINION BY HENDERSON, J., May 11, 1904:

The appeal in this case raises the question whether the Act of June 4, 1901, P. L. 404, relating to insolvency, etc., is suspended by reason of the existence of the act of congress of July 1, 1898, establishing a general law in relation to bankruptcies.

The constitution of the United States gives to congress the power to establish uniform laws on the subject of bankruptcies throughout the United States, and the act of congress of July 1, 1898, was in force at the time of the enactment of the Pennsylvania statute of June 4, 1901. The latter act is substantially a bankrupt act, and resembles in many of its features the United States statute relating to the same subject.

It is not contended that the power vested in congress by the constitution of the United States is exclusive of that of the states, and that there remains no power in the latter to legislate upon the subject. It is an established doctrine that the powers granted to congress are only exclusive of the powers upon the same subject existing in the states, when an exclusive power is expressly delegated to congress, or there is such incompatibility in the exercise of it by the states as to produce the necessary conclusion that it is exclusive in congress. Where there is no such exclusive grant to congress or such incompatibility concurrent power remains with the states. Where, however, in the case of concurrent powers congress has exercised its powers on a given subject, the control of the state over that subject is by such action of congress prohibited : 1 Kent's Com. 390.

The federal courts have applied this rule to the subject of bankruptcies, and have held that when Congress has legislated upon the subject by the enactment of a bankrupt law the power of the states is controlled and suspended. This doctrine was clearly set forth by Chief Justice MARSHALL in Sturges v. Crowninshield, 17 U. S. 122, and has been declared or assumed in numerous subsequent cases. The existence of the power in

congress does not exclude the authority of the states over the same subject, but when this power is exercised by congress such exercise is held to be incompatible with the exercise of the same power by the states. In the language of the distinguished judge above named, "it is not the right to establish these uniform laws, but their actual establishment which is inconsistent with the partial rights of the states."

The authority of this case was recognized in Ogden v. Saunders, 25 U. S. 213. One of the questions considered in Butler v. Goreley, 146 U. S. 303 (13 Sup. Ct. Repr. 84), was whether, after the repeal of the United States bankrupt act of 1867, the insolvency statute of Massachusetts should have been re-enacted in order to become operative. Upon this point the court held that "the repeal of the bankrupt act of the United States removed an obstacle to the operation of the insolvency laws of the state and this rendered unnecessary their re-enactment." In Tua v. Carriere, 117 U. S. 210 (6 Sup. Ct. Repr. 595), the court held that the enactment of an insolvent law by the state of Louisiana during the life of the national bankrupt act "would have been merely tantamount to a provision that the former should take effect upon the repeal of the latter." It was further held that by the repeal of the bankrupt act the insolvent law of the state became valid and operative. To the same effect is the opinion of Judge STORY in Ex parte Lucius Eames, 2 Story (U. S.), 322, in which it was decided that the insolvent laws of Massachusetts were completely suspended as to persons and cases within the purview of the national bankrupt act. The opinion of the court in the Farmers' and Mechanics' Bank v. Smith, 3 S. & R. 63, is in substantial accord with the cases above cited. In the latter case it was contended that the authority of congress to establish uniform laws on the subject of bankruptcy is exclusive, and that no state, therefore, has power to pass a law on that subject. Chief Justice TILGHMAN, in delivering the opinion of the court, said : "There would be great strength in this argument if congress had exercised their power by passing a bankrupt law, because then the uniformity which they were authorized to establish would be broken in upon by the act of an individual state." It was decided, however, that the power of the general government was not exclusive, and

that as congress had not legislated upon the subject the state insolvent law was operative. The same judge, in discussing the subject of the concurrent powers of the United States and the several states, in Moore v. Houston, 3 S. & R. 169, said : " The subject of a state bankrupt law came very lately before this court in the case of the Farmers' and Mechanics' Bank v. Smith; and it was decided that the law of Pennsylvania was valid because the United States had no existing law on the subject."

It was held by the Supreme Court of Massachusetts in Griswold v. Pratt, 50 Mass. 16, that the United States Bankrupt Act of 1841 suspended the operation of the insolvent laws of that state as to persons and property subject to that law although no proceedings were instituted under the bankrupt act, and that the effect of the bankrupt law was necessarily to suspend the operation of any conflicting state law. The same doctrine is declared in Parmenter Manufacturing Co. v. Hamilton et al., 172 Mass. 178 (51 N. E. Repr. 529), in which it was held that the language of the national bankrupt act indicates that it was the purpose of congress that the new system of bankruptcy should supersede all state laws in regard to insolvency. The same conclusion was reached by the Supreme Court of Connecticut in Ketcham v. McNamara, 50 L. R. A. 641. In Harbaugh v. Costello, 184 Ill. 110 (56 N. E. Repr. 363), the court held, " it is manifest that congress intended that all laws clothing the state courts with a special jurisdiction in insolvency matters should be superseded by the bankruptcy law " (July 1, 1898). To the same effect are : Orr et al. v. Lisso et al., 33 La. Ann. 476 ; Rowe v. Page, 54 N. H. 190 ; Palmer v. Hixon, 74 Me. 447 ; Martin v. Berry, 37 Cal. 208 ; Van Nostrand v. Carr, 30 Md. 128.

The only cases decided by courts of last resort holding a different view, which have come under our observation, are In re Ziegenfuss, 2 Ired. 463, and Reed v. Taylor, 32 Ia. 209. These cases recognize the paramount authority of the act of congress, but hold that the state statute is operative up to the time when proceedings are instituted under the national bankrupt act. The efficiency of the state statute is made to depend upon action or nonaction under the bankrupt law. This seems a foundation entirely too unsubstantial upon which to base the

right to proceed under the state law, as to persons and subjects affected by the national bankrupt act. The law would be vain which would invite legal process liable to be avoided and defeated at any stage of the proceedings by the assertion of another and paramount authority; it should be effective for the purpose of carrying to conclusion proceedings instituted thereunder. It is conceded on all sides, however, that any proceedings under the insolvent law of the state might be rendered abortive by an insolvent debtor or his qualified creditors by filing a petition in bankruptcy where the debtor was subject to the operation of the national bankrupt act. The national and state laws are intended, in a large degree, to operate upon the same persons and property and while there is a close resemblance in the methods of administration the mode of procedure and remedies are not the same. There might and doubtless would be conflict in the operation of the national and state statutes. The latter must, therefore, yield to the former. The uniformity contemplated by the constitution can only be secured through the act of congress, the prosecution of insolvent proceedings under the laws of the various states necessarily tending to confusion and lack of uniformity.

In view of the manifest purpose of the constitutional provision on the subject of bankruptcy and the great weight of authority in support of the conclusion reached we feel constrained to hold that the act of June 4, 1901, relating to insolvency did not become operative because of the existence of the bankruptcy law of the United States of July 1, 1898, as to the persons and subjects to which the latter act applies. The order of the court of June 23, 1903, vacating and setting aside the execution of the plaintiff is, therefore, reversed.