## CLOSSER et al. v. STRAWN.

### (District Court, W. D. Pennsylvania. September 1, 1915.)

### No. 27.

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS ⬤═184—RIGHTS AND REMEDIES OF ASSIGNEE.

In the absence of a statute conferring greater powers, an assignee for the benefit of creditors succeeds to the rights of his assignor only, and not to the rights or remedies of creditors.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 555–571; Dec. Dig. ⬤═184.]

2. BANKRUPTCY ⬤═9—STATE INSOLVENCY LAWS—SUSPENSION BY BANKRUPTCY ACT.

Act Pa. June 4, 1901 (P. L. 404), which is in the nature of a bankruptcy act, is suspended, and no authority can be derived from its provisions, so long as the national Bankruptcy Act is in force.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 7–9; Dec. Dig. ⬤═9.]

3. BANKRUPTCY ⬤═9—STATE INSOLVENCY LAWS—EFFECT OF BANKRUPTCY ACT.

Congress having legislated upon the subject of insolvency proceedings by the passage of Bankr. Act July 1, 1898, c. 541, 30 Stat. 544, and its amendments, no additional bankruptcy or insolvency act can be enforced in any of the states, and no person excepted from the operation of the Bankruptcy Act can be subjected to, or have the benefit of, any state bankruptcy law.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 7–9; Dec. Dig. ⬤═9.]

4. REMOVAL OF CAUSES ⬤═11—JURISDICTION OF FEDERAL COURT—CREDITORS' SUIT.

The rule of the federal courts that a bill in equity to set aside a fraudulent conveyance can only be maintained by judgment creditors may be waived by the defendant, and when waived cannot be invoked by the plaintiff to defeat jurisdiction on removal.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 29–31; Dec. Dig. ⬤═11.]

5. FRAUDULENT CONVEYANCES ⬤═237—JURISDICTION OF EQUITY—SUIT TO ENFORCE TRUST.

A suit by assignees for the benefit of creditors, on behalf of the creditors, brought under authority of a state statute, to set aside a fraudulent conveyance, is one brought in the enforcement of a trust, of which equity has jurisdiction.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 674–680, 684–686; Dec. Dig. ⬤═237.]

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by James W. Closser and Corbley K. Spragg, assignees for the benefit of creditors of James L. Iams, against John H. Strawn, trustee. On motion by defendant to dismiss bill, and motion by plaintiffs to remand to state court. Motion to remand denied, and motion to dismiss sustained.

John C. Bane, of Pittsburgh, Pa., Jas. J. Purman, of Waynesburg, Pa., and Wiley & Marriner, of Washington, Pa., for plaintiffs.

John S. Wendt, of Pittsburgh, Pa., P. D. Rinehart, of Waynesburg, Pa., and Jas. I. Brownson, of Washington, Pa., for defendant.

ORR, District Judge. This is a suit in equity, which was removed from the court of common pleas of Greene county, in the state of Pennsylvania. It is before the court upon a motion on the part of the defendant to dismiss the bill, and also upon a motion on the part of the plaintiffs to remand the suit to the court in which it was originally brought. The averments of the bill, so far as they are material to the consideration of the questions now before the court, are substantially as follows:

On the 1st of April, 1912, pursuant to the act of assembly of the commonwealth of Pennsylvania approved June 4, 1901 (P. L. 404–424), James L. Iams, of Morris township, Greene county, Pa., a person engaged chiefly in farming or the tillage of the soil, and Belle S. Iams, his wife, made a deed of assignment to the plaintiffs of all the property of the said Iams, for the benefit of the latter's creditors, which deed was duly delivered and recorded. The plaintiffs accepted the trust created by said deed, and have in all respects performed their duties as such assignees according to the provisions of said act.

The creditors of Iams confirmed and approved the appointment of the plaintiffs as such assignees, and waived their right to select additional assignees, and thereby duly constituted and appointed the plaintiffs as their representatives, by force and virtue of which, and of the said deed, and of the said act of assembly, the plaintiffs became the representatives of such creditors, and became entitled by proper steps in their own names as assignees to have vacated and set aside for the benefit of such creditors any lien, conveyance, or incumbrance which could have been avoided by any of the creditors; and by virtue, also, of the same the plaintiffs became vested with all the property of the said Iams which might have been liable for the payment of any of his debts.

Before March 1, 1910, the aggregate of the property of the said Iams, at a fair valuation, was not sufficient to pay his debts, and on and since that date the aggregate of the property of the said Iams, inclusive of any property which he might have conveyed, transferred, concealed, or removed with intent to defraud, hinder, or delay his creditors, including his undivided interest in the lands described in the mortgage hereinafter referred to, at a fair valuation, has not been sufficient to pay his debts, and before and since that date said Iams was, has been, and still is insolvent within the true intent and meaning of said act of assembly, and during all of said period the said defend-

ant and those he represents had knowledge and notice of such insolvency.

As of March 1, 1910, the defendant in his capacity as receiver of the Farmers' & Drovers' National Bank of Waynesburg, Pa., and upwards of 60 national banking associations, trust companies, and other banks and banking associations of Pennsylvania, Ohio, Maryland, West Virginia, and Virginia, together with other persons named therein, with full knowledge and notice of the insolvency of said Iams, entered into a contract in writing, as parties of the first part, with said Iams, George F. Auld, and J. F. Tilton, as parties of the second part, whereby it was agreed that the defendant be appointed trustee for the parties of the first part in said contract, and be authorized and empowered to take and receive in his name as trustee the evidences of indebtedness therein provided for, and to collect the same and distribute the proceeds among the parties entitled thereto, according to the terms of the agreement, and that said Iams and said Auld, without stipulating the amount for which either of them was supposed to be liable, should deliver to the defendant, in his capacity as trustee, a certain mortgage dated April 1, 1910, conveying coal and mineral rights for the sum of $126,500. Pursuant to said contract the said Iams and the said Auld executed and delivered to the defendant such mortgage, which was duly recorded in the proper office for the recording of deeds and mortgages.

Said contract of March 1, 1910, stipulated that the said Tilton should pay to the said defendant certain money in cash and execute and deliver a mortgage for $3,500. The said contract of March 1, 1910, further provided that for its purpose all the several obligations listed in an exhibit attached thereto should be treated as valid obligations, without the necessity of further proof to establish the same, and that the distribution of moneys to be recovered in pursuance of said agreement and the said mortgage should be based upon the face value thereof as the same stood at the time of the closing of the Farmers' & Drovers' National Bank on the 12th day of December, 1906.

The contract contains certain provisions for the release of the second parties from liability for all claims held by the other party, contains certain stipulations with respect to the application of the moneys to be received by the said receiver of the bank, such as the payment of certain judgments, etc., and, further, that its execution and delivery should not be taken as an admission of liability of any of the second parties as maker, or indorser, or otherwise, of any of the particular items listed in the exhibit attached to the contract. Said contract further provided that all the provisions should be inoperative, null, and void, at the option of the said John H. Strawn, if there were bankruptcy proceedings instituted against any of the second parties, and, further, that it should be binding and effectual as between the parties only when it should be approved by the Comptroller of the Currency of the United States, and an order be made by a court of competent jurisdiction authorizing its execution and delivery. Such order was not made by such court until January 23, 1911.

The agreement of March 1, 1910, further provided that the amounts which would have been distributed to parties entitled to execute said

agreement, but refusing to do so, should be paid and distributed to the second parties as their interests should appear, and that thereafter the rights of the nonassenting parties should remain as theretofore, unaffected by the agreement. Some of the parties refused to sign, and by reason of such refusal the plaintiff charges that the defendant became trustee in said mortgage for the said Iams, Auld, and Tilton. There is a further stipulation in the agreement that the mortgages to be given by the second parties should impose no personal liability, thereby relieving Tilton, in consideration of his paying a comparatively small sum, of and from all personal liability for and on account of the principal consideration of the contract which was very large.

The plaintiffs charge that there has been no accounting or settlement between the trustee in said mortgage and the mortgagors, or either of them, for the purpose of ascertaining their separate or individual liability, and that such separate indebtedness or liability has never been ascertained. They further charge that a large number of the judgments listed in the schedule attached to said agreement were not entered or obtained against said Iams, and that he never was liable therefor, nor bound thereby, and that some of said judgments were recovered upon forged paper.

The plaintiffs further charge in the bill that the said defendant and the said Iams well knew that said judgments were obtained upon forged paper, and that the said Iams was in no respect liable therefor or bound thereby, and they further charge that a large majority of the claims in the exhibit attached to the said contract never were just and valid claims against Iams, and do not purport to be, and that they are based upon false, fraudulent, and forged paper, all of which was well known to the said defendant and to the said Iams, and, further, that a large number of the claims inserted in said agreement had been paid and extinguished, or partially so, prior to the time when said mortgage became effective, and that the said defendant and the said Iams had knowledge thereof.

The plaintiffs further charge that the proposed intent and effect of the said agreement and of the mortgage were to divert the assets of Iams, to the value of upwards of $100,000, from his creditors existing at the time of making said agreement and mortgage, to persons to whom said Iams was not indebted, and also to blend and intermingle the claims of the parties of the first part to said contract against the said Iams, Auld, and Tilton into a common pool and apply thereto the proceeds of said mortgage when collected.

Plaintiffs further charge that the true consideration of said mortgage was concealed from the creditors of said Iams, and that the contract of March 1, 1910, was not referred to in said mortgage, and that knowledge and notice of the contents of said contract were withheld and concealed from the creditors of said Iams, for the purpose of hindering, delaying, and defrauding them in the enforcement and collection of their claims against the said Iams and the lands and interest in coal covered by the mortgage.

The bill of the plaintiffs further recites certain proceedings instituted in the county of Washington on the said mortgage by scire facias, wherein judgment was obtained in the sum of $148,950.62, with inter-

est from May 26, 1914, which judgment was affirmed by the Supreme Court of Pennsylvania on January 2, 1915, and in which proceedings it was held that the plaintiffs in this bill had no standing in that court to make or set up as a defense thereto any of the matters set forth at length in the present bill. The bill further charges that the said defendant has caused a writ of levari facias to be issued upon said judgment, by virtue of which the mortgaged premises have been advertised for sale by the sheriff of said county.

The plaintiffs further insisting that by virtue of the said act of assembly of Pennsylvania, and by virtue of the proceedings thereunder which are pending at No. 1 of June term, 1912, in the common pleas court of Greene county, Pa., they are authorized and empowered to set aside and have vacated for the benefit of all the creditors of said Iams the said mortgage, judgment, and other proceedings thereon, and averring that they are in possession of the property of said Iams, and have been from the date of the deed of assignment, and averring that they are unable to sell said lands at a fair and adequate price by reason of the cloud and incumbrance of said mortgage upon the title thereto, they pray for relief in various forms—principally to have the mortgage and judgment and lien thereof vacated and set aside and to have an accounting from the said defendant.

## On Motion to Dismiss.

The reasons in support of the motion to dismiss may be briefly summarized as follows:

That the plaintiffs by their bill show no title or right to maintain such a bill, otherwise than by virtue of the act of assembly of the state of Pennsylvania approved June 4, 1901 (P. L. 404).

That such act of assembly is an insolvency law, amounting to, and in substance and effect being, a state bankruptcy statute, and as such is suspended and rendered inoperative under and by virtue of the Constitution and laws of the United States, while the bankruptcy law passed by Congress on July 1, 1898, as subsequently amended, is in full force and effect.

That so much of said act of Pennsylvania as purports to grant to the plaintiffs or invest them with the right and power to proceed by proper legal steps in their own names as assignees for the benefit of creditors of their assignor, to have vacated and set aside for the benefit of all the creditors of their assignor any judgment, execution, conveyance, or incumbrance, etc., which could have been avoided by the creditors of said assignor, or any of them, was on the date of the filing of said bill, and now is, suspended and inoperative by reason and in consequence of the enactment of the aforesaid act of Congress approved July 1, 1898.

The plaintiffs by said bill show no lawful title and right in themselves to maintain the suit, or to obtain the relief for which they pray.

[1] It is plain under the authority of Strawn, Trustee, v. Iams, 247 Pa. 132, 93 Atl. 174, which was the appeal from the proceeding in Washington county for the foreclosure of the mortgage, recited in the bill, that the plaintiffs, unless the right is vested in them under the

state insolvency act of June 4, 1901 (P. L. 404), have no right to maintain this bill. The following language from the opinion of the Supreme Court in that case clearly and correctly states the law:

"Leaving that act out of consideration, such assignee succeeds to the rights of his assignor, and none others. In the language of Gibson, C. J., in Vandyke v. Christ, 7 Watts & S. [Pa.] 373: 'He is the debtor's instrument for distribution, and stands in relation to the property as stood the debtor himself, except that it cannot be seized in his hands on a creditor's execution. It has been transferred to him, as it would have been transferred to the debtor's right hand, had it pleased him to exercise his common-law right of preference, by payment in person. As he stands in no privity to the creditors, he cannot arrogate to himself any of their attributes and rights.' It was ruled in Bullitt v. Methodist Episcopal Church, 26 Pa. 108, that such assignee so purely represents the debtor that he cannot even avoid a prior assignment which would be void against creditors, and that, such being the character and the rights of a voluntary assignee, he is bound by the judgments rendered against the debtor before his trust began; that neither a judgment nor mortgage creditor can intervene, either to set aside a judgment or prevent its revival, except for fraud, and then it is done not by defending in the shoes of the assignee, but by a collateral proceeding in his own behalf. * * * 'The assignee is but a volunteer, who takes subject to the judgment against the debtor, who has no estate of his own to protect as a purchaser, and who leaves the creditor interested in the assignment, in this as in all other cases, to the protection of that self-interest in their debtor which prompts every man to defend himself against false claims.' Fulton's Estate, 51 Pa. 204. With his rights and powers circumscribed at common law as we have indicated, clearly the assignee in this case would have no standing to contest the plaintiff's right to judgment in the scire facias upon the debtor's mortgage, except it was conferred by statute."

In passing, it is well to note that the court considers the extent to which the powers of an assignee are enlarged by the statute, with special reference to the seventeenth section thereof, and determines that the assignees in the case before them were not entitled to defend in the foreclosure proceeding, because the act did not confer upon the assignees rights in relation to the property incumbered or transferred more than four months before the assignment, which creditors did not enjoy prior to the act, but empowered the assignees to enforce in their own names the rights which prior to the act were enforceable only by the creditors.

[2] It is significant that the Supreme Court of its own motion suggests a more serious question than any which had been argued before them in the case, in the following language:

"The case suggests the more serious question, whether the act of June 4, 1901 (P. L. 404), is not inoperative, so long as the federal bankruptcy statute (Act July 1, 1898, c. 541, 30 Stat. 544) is in force; but this question was not raised in the court below, nor was it argued on the appeal. We have assumed, for the purpose of this case only, that the act is operative."

The question thus stated to be so serious in that litigation is now before this court. Turning to the Pennsylvania statute, we find its title to be as follows:

"An act relating to insolvency; embracing, among other matters, voluntary assignments for the benefit of creditors, and adverse proceedings in insolvency by creditors; forbidding, also, certain preferences; providing for the distribution of the insolvent's estate, and in certain contingencies relieving him, and others liable with him, from further liability for his or their debts."

The very title of the act indicates that it is an act in the nature of a bankruptcy act. Section 1 provides that:

"If any person, persons, firm, limited partnership, joint stock company or corporation, being insolvent or in contemplation of insolvency, with a view to give a preference to any creditor or person having a claim against, or who is under any liability for, such insolvent, shall procure, suffer or permit any judgment to be entered, by confession or otherwise, or any execution to be levied, or any attachment, or sequestration to be made of any part of his, their or its real or personal property, or shall make any payment, pledge, assignment, transfer, conveyance or incumbrance thereof, either absolutely or as collateral security for a debt then existing, whether due or not, such judgment, execution, attachment, sequestration, payment, pledge, assignment, transfer, conveyance, or incumbrance shall inure to the benefit of all the creditors of such insolvent, if an assignment for the benefit of creditors be made or proceedings in insolvency be commenced within four months after," etc.

Passing by certain provisions of the act relating to voluntary assignments, we find provisions for proceedings on the part of creditors of an alleged insolvent to have such insolvent so adjudged upon grounds specifically set forth in the act. There is provision in the act for delivery by the insolvent of all his assets to the receiver, or to such assignee or additional assignee as may be selected by the creditors at a meeting required to be called for that purpose. There is provision in the act for the discharge of the insolvent from liability to those creditors making claim to their share in the assets, except with respect to claims arising in certain cases, such as fraud, embezzlement, and for false oaths in reference to the settlement of the estate, etc. It is plain that it is in the nature of a bankruptcy act. This is the view taken by the Superior Court of Pennsylvania in Potts v. Smith Mfg. Co., 25 Pa. Super. Ct. 206.

The seventeenth section of the act, upon which the plaintiffs in this case rely, so far as is necessary to be set forth, is as follows:

"Sec. 17. An assignee or receiver for the benefit of creditors shall be under the control of the proper court of common pleas, shall be the representative of the creditors of the insolvent, and entitled by proper legal steps, in his own name as assignee or receiver, to have vacated and set aside for the benefit of all the creditors any judgment, execution, attachment, sequestration, payment, pledge, assignment, transfer, conveyance or incumbrance which heretofore could have been avoided by the creditors, or any of them, or by which it is attempted to give one creditor preference over another, or which by this act inures to the benefit of all the creditors of such insolvent."

It is plain, therefore, that that section is an enlargement of the powers of assignees for the benefit of creditors. It follows that such enlargement is for the purpose of enabling the accomplishment of the general purposes of the act. It is a material part of the act, and should not be considered as an enlargement of the common-law rights of assignees for the benefit of creditors, irrespective of the act of which it is such material part. In Potts v. Smith Mfg. Co. supra, the court held that:

"The Pennsylvania act of June 4, 1901, relating to insolvency is suspended by reason of the existence of the federal Bankruptcy Act of July 1, 1898, and does not become operative as to the persons and subjects to which the federal act applies."

227 F.—10

The reasoning in support of that decision is sound. It rests upon the proposition that, where the Constitution of the United States leaves in the states and in Congress concurrent power over a particular subject, and Congress has exercised its power over such subject, the control of the states over that subject is prohibited.

It is unfortunate that the same court, in later cases, as for instance, Miller v. Jackson, 34 Pa. Super. Ct. 31, has held that the Pennsylvania insolvency act of June 4, 1901 (P. L. 404), is not suspended by the federal Bankruptcy Act as to farmers. No consideration at length seems to have been given the question, but the decision seems to have been reached because the act of Congress, while affording wage-earners and farmers the opportunity of having the benefit thereof, has expressly excepted them from among those who may be compelled to comply with its provisions.

In the view we take of the question, we are bound to hold that, while the bankruptcy law of the United States is in force, the act of 1901 of Pennsylvania is suspended, and that no farmer who declines to avail himself of the provisions of the Bankruptcy Act can avail himself of the insolvency act of Pennsylvania, or be subjected to the requirements of that act.

[3] It will be noticed that the Pennsylvania act was not passed until three years after the bankruptcy law of the United States went into effect. So far as wage-earners and tillers of the soil may be affected by the provisions of the bankruptcy law, the passage of the insolvency act of Pennsylvania, which by its language would include such persons, would indicate on its face a dissatisfaction by the state of Pennsylvania with the act of Congress and a purpose and attempt to extend the act to others who might be excepted from involuntary proceedings under the act of Congress. Such, however, is merely the superficial glance, which, of course, should not control.

By the Constitution of the United States (article 1, § 8) the power was granted to Congress "to establish * * * uniform laws on the subject of bankruptcies throughout the United States." That the bankruptcy law of 1898 is constitutional is without doubt at this late date. Congress, therefore, having passed the bankruptcy law of July 1, 1898, entitled "An act to establish a uniform system of bankruptcy throughout the United States," and having excepted from its operation certain persons from those who may be adjudged bankrupts under said act, and yet granted to the same persons the privilege of becoming voluntary bankrupts under said act, should be deemed to have intended that no person who could not be adjudged an involuntary bankrupt under the bankruptcy law could be adjudged an involuntary bankrupt under any state law on the subject, and that persons who had the privilege of becoming voluntary bankrupts under the bankruptcy law could not ignore the privileges of that law and become voluntary bankrupts or insolvents under any state law. The controlling principle is expressed in this language of the Supreme Court of the United States, quoted from time to time and last found in Southern Railroad Company v. Railroad Commission of Indiana, 236 U. S. 439, 446, 35 Sup. Ct. 304, 305 (59 L. Ed. 661):

"If Congress have a constitutional power to regulate a particular subject, and they do actually regulate it in a given manner and in a certain form, it cannot be that the state Legislatures have a right to interfere, and, as it were, by way of complement to the legislation of Congress, to prescribe additional regulations, and what they may deem auxiliary provisions for the same purpose. In such a case, the legislation of Congress, in what it does prescribe, manifestly indicates that it does not intend that there shall be any further legislation to act upon the subject-matter. Its silence as to what it does not do is as expressive of what its intention is as the direct provisions made by it. * * * The will of Congress upon the whole subject is as clearly established by what it had not declared as by what it has expressed."

It seems to be clear that the will of Congress, as expressed in the Bankruptcy Act and its various supplements, is that no other or additional bankruptcy act should be enforced in any of the states, and that no persons excepted from the operation of the bankruptcy law of the United States should be subjected to, or have the benefit of, any other bankruptcy law passed by any of the states. It is unnecessary to consider the cases in which this proposition has been considered to any extent. The insolvency act of Pennsylvania of 1901 is suspended, because the bankruptcy law of Congress and its supplements are in full force. Because the state insolvency law is not in force, the plaintiffs in this case have derived no authority by reason of any of the provisions of that law, and there was not extended to them by that law, or by the proceedings in court pursuant to that law, any other or greater powers than would exist in them under a deed of voluntary assignment at common law.

From the foregoing considerations, it is plain that the bill shows no lawful title or right in the plaintiffs to maintain the suit or obtain the relief for which they pray. Their bill, therefore, must be dismissed, unless the motion to remand prevail.

## On Motion to Remand.

[4] The reason in support of this motion is stated therein to be:

"That the said District Court sitting in equity has no jurisdiction in the action. neither of the subject-matter thereof, nor of the parties thereto, or any of them."

It plainly appears from the record that there is diversity of citizenship between the parties, and that the amount involved exceeds the jurisdictional limit fixed by the act of Congress. The argument on the part of the plaintiffs on the question of the jurisdiction of the court was in substance as follows:

The Constitution of the United States distinguishes between and separates law and equity, so that legal and equitable remedies must be separately pursued. Hence a state statute providing a remedy in equity, where previously the remedy was at law, does not enlarge the equitable jurisdiction of the federal courts, and accordingly, notwithstanding the fact that under the state act of 1901 the plaintiffs could maintain the present bill in the state court, such bill cannot be entertained by this court, for the reason that, under the rules of equity which govern this court, a bill in equity to set aside a fraudulent

conveyance cannot be maintained for the benefit of creditors who are not judgment creditors.

To support the argument on the part of the plaintiffs, the cases of Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, and Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 37 L. Ed. 804, are cited. In each of those cases the debtor interposed the defense that his creditor, who was the plaintiff, had not exhausted the legal remedies, and that to fix upon him a liability and the amount thereof would be in contravention of the fundamental provision of the Constitution, and impair his right of trial by jury. In the case at bar the plaintiffs, who are the creditors, raise the question of jurisdiction to hear and determine their claims, although they have, by instituting their proceeding in the state court, attempted to enforce their claims without regard to their right of trial by jury.

The inconsistency of their position is apparent, and the weight of their argument in support of the present motion is diminished accordingly, if there should be weight given to it at all. The defendant has not raised the question in this case. On the contrary, by the exclusion of the question from his motions to dismiss, which go to the merits of the bill, he has waived a right to insist that the creditors whom the plaintiffs represent should reduce their claims to judgment. Not only that, but defendant has admitted in the brief filed on his behalf, and by the argument of his counsel in court, that this court has jurisdiction of the controversy between the parties, although insisting that the plaintiffs upon their own showing could not maintain their bill. That the defense in an equity suit that the complainant has not exhausted his remedy at law, or is not a judgment creditor, may be waived by the defendant, and that, when waived, the case stands as though the objection never existed, is clear under the authorities, of which it is necessary to recite only Re Metropolitan Railway Receivership, 208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403.

[5] That this court has jurisdiction seems plain on other grounds. The title to the property was conveyed to the plaintiffs by a deed of assignment in trust for the benefit of the creditors of Iams. By that deed a trust was created in favor of the creditors which appears to be enforceable in equity, and if there be such trust in favor of a creditor jurisdiction of the bill should be retained, regardless of the fact as to whether or not the plaintiffs had recovered a judgment at law. See Case v. Beauregard, 101 U. S. 688, 25 L. Ed. 1004.

Again, as appears, the plaintiffs are seeking to enforce a new right of action vested in them by the seventeenth section of the insolvency law of Pennsylvania above recited, and it seems clear that such new right, if any there be, conferred by the state, should be enforced in this court, where there is the requisite diversity of citizenship and the proper amount involved. See Cowley v. Northern Pacific Railroad Co., 159 U. S. 569, 16 Sup. Ct. 127, 40 L. Ed. 263. It may be noted, too, that the right of action to set aside fraudulent conveyances which was intended to be given to assignees by the insolvency act of Pennsylvania is almost identical with the right of action for the same pur-

pose which the Bankruptcy Act of the United States gives to a trustee in bankruptcy. In the case of the latter it is well settled that he may proceed for such purpose by bill in equity and will not be required to seek his remedy at law. Such suit may be maintained, although neither the trustee nor any creditor has reduced the claim against the bankrupt to judgment. Collier on Bankruptcy (10th Ed.) 1042f.

We are of opinion that this court has full jurisdiction to entertain this bill and to dispose of it upon its merits. The motion to remand must be overruled. The motion to remand having been overruled, and being of the opinion that the motion to dismiss should prevail, it is ordered that the same be and is hereby sustained, and the bill dismissed.

Let a decree be drawn.

⊝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes